OPINION OF THE COURT
 

 SCIRICA, Circuit Judge.
 

 Defendant William Thayer appeals his jury conviction and sentence. William Thayer and his wife and co-defendant Josephine Thayer (who has not appealed her
 
 *217
 
 conviction or sentence) were convicted on twenty counts of criminal liability for willful failure to pay over federal withholding and F.I.C.A. taxes in violation of 26 U.S.C. § 7202 and 18 U.S.C. § 2; willful filing of false claims against the government, in violation of 18 U.S.C. §§ 2,152; and willful concealment of bankruptcy-estate assets, in violation of 18 U.S.C. §§ 2, 152. We will affirm the convictions, but will vacate the judgment of sentence and remand for further proceedings consistent with this opinion.
 

 I. Background
 

 A. Facts
 

 William and Josephine Thayer were sole owners of two corporations, Mobile Inmate Systems Corp. (MIS) and Equipment Leasers of Pennsylvania, Inc.(ELOP).
 
 [1]
 
 MIS and ELOP both maintained corporate accounts at First Lehigh Bank, as did two other companies owned and operated by the Thayers. In the late 1980s or early 1990s First Lehigh Bank had asked Thayer to consolidate the funds of all four of his companies into one account maintained in MIS’ name (“consolidated MIS account”). According to CPA Robert Gillespie, who testified for the Thayers at trial, both MIS and ELOP deposited money into the consolidated MIS account consistent with the bank’s request.
 

 Both MIS and ELOP accurately reported their employee federal withholding and F.I.C.A. taxes in IRS Form 941, Employer’s Quarterly Federal Tax Return under I.R.C. § 6672(a).
 
 [2]
 
 But from 1991 to 1993, MIS failed to pay over the federal withholding and F.I.C.A. taxes withheld from employees’ wages in ten quarters. From 1991 to 1994, ELOP failed to pay over the federal withholding and F.I.C.A. taxes withheld in eleven quarters. In July 1991, William Thayer signed IRS Form 2751, “Proposed Assessment of 100 Percent Penalty,” accepting personal responsibility for unpaid tax liability and civil penalties for MIS’ delinquent Form 941 taxes for two quarters in 1991. In June 1992, the Thay-ers signed IRS Form 2751 for ELOP’s unpaid taxes for the second and fourth quarters of 1991, acknowledging the same personal responsibilities with regard to ELOP.
 

 On their personal income tax returns (IRS Forms 1040) for 1991,1992, and 1993, the Thayers reported negative or very small adjusted gross income based on losses carried forward and requested refunds for all or most of the money that had been withheld from their salaries in those years. Josephine Thayer testified she expected the IRS to automatically apply the refunds toward the unpaid withholding taxes and never expected to receive a cash payment. No money was sent to the Thayers.
 

 In 1988 William Thayer bought a condominium in Atlantic City. Because he could not meet the purchase price at closing, the deed was held in escrow and Thayer commenced payments toward the purchase price. The sales agreement and deed listed William Thayer as grantee. Thayer made the first two payments on his personal checks, with “Loan to ELOP” written as notations. Subsequent payments were made from the MIS corporate checking account at First Lehigh Bank. At trial, Josephine Thayer testified that the condominium was bought for ELOP’s business. CPA Gillespie testified that ELOP had sufficient money in the consolidated MIS account to cover the payments. In 1995, the condominium seller provided a new deed, which stated in one place that Thayer was the grantee and in another that Atlantic County Investments Inc. was the grantee. In late 1996, the Thayers moved into the condominium.
 

 
 *218
 
 In 1991, MIS petitioned for Chapter 11 bankruptcy. There were 24 creditors, all unsecured, including the IRS and the Pennsylvania Department of Revenue. During the Chapter 11 proceedings, ten payments were made from the consolidated MIS account at First Lehigh Bank for the Atlantic City condominium, totaling approximately $170,800. MIS did not file reports of its operating expenses as required by 11 U.S.C. § 704(8).
 

 B. Procedural History
 

 The Thayers were indicted on four clusters of charges and convicted by a jury on several counts. In Counts 1-21, the Thay-ers were charged with willful failure to pay over withheld taxes on behalf of MIS (ten quarters, Counts 1-10) and ELOP (11 quarters, Counts 11-21) in violation of I.R.C. § 7201 and 18 U.S.C. § 2. The Thayers were found guilty on the counts charging nonpayment of taxes for the quarters in which trial testimony established the companies had positive cash balances at some point during the quarter. The Thayers were acquitted of willful evasion of income taxes in. violation of I.R.C. § 7201 and 18 U.S.C. § 2 (counts 22-24). The government charged the Thayers’ corporations had paid for their personal living expenses by making payments on the condominium, thus providing the Thayers with unreported income.
 

 The Thayers were charged with willfully filing false claims (for tax refunds) against the United States in violation of 18 U.S.C. §§ 287 and 2 (counts 25-27). The government contended the Thayers had submitted claims for tax refunds with knowledge that MIS and ELOP owed taxes for which they were personally responsible. The jury found the Thayers guilty on all these counts.
 

 The Thayers were also charged with willful concealment of bankruptcy-estate assets in violation of 18 U.S.C. §§ 152 and 2 (Counts 28-37). At issue were the payments made for the condominium in Atlantic City out of the consolidated MIS account. The government contended those payments were made with MIS money, and were concealed from the creditors in MIS’ bankruptcy proceedings. The Thay-ers countered that the money, while drawn from the consolidated MIS account, was ELOP’s money, not MIS’. The jury found the Thayers guilty on all these counts.
 

 The Thayers filed a motion for acquittal under Fed.R.Crim.P. 29(c) and a motion for a new trial under Fed.R.Crim.P. 33, both of which the District Court denied.
 
 [3]
 

 At sentencing, the court grouped the tax and bankruptcy counts separately. On the bankruptcy counts, two points were added to William Thayer’s base offense level for violation of a judicial process under U.S.S.G. § 2Fl.l(b)(3)(B). Although Thayer’s offense level was 19, the court departed downward six levels. With a criminal history category of III, Thayer’s sentencing range was 18-24 months. The court imposed an 18 month sentence, plus three years supervised release and restitution of $149,355.
 
 [4]
 

 II. Jurisdiction and Standard of Review
 

 The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.
 

 Where the issues raised on appeal are preserved at trial, or through a timely motion for acquittal under Fed.R.Crim.P. 29(c), we will overturn a jury verdict “only when the record contains no evidence, regardless of how it is weighted,
 
 *219
 
 from which the jury could find guilt beyond a reasonable doubt....”
 
 United States v. Anderson,
 
 108 F.3d 478, 481 (3d Cir.1997) (internal quotation marks and citations omitted). But issues on appeal which were not raised before the District Court, we will review for plain error. See
 
 United States v. Olano,
 
 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). A conviction based on insufficient evidence is plain error only if the verdict “constitutes a fundamental miscarriage of justice.”
 
 United States v. Barel,
 
 939 F.2d 26, 37 (3d Cir.1991). To the extent that Thayer’s argument raises issues of statutory interpretation, we will exercise plenary review.
 
 See United States v. Parise,
 
 159 F.3d 790, 794 (3d Cir.1998);
 
 United States v. Hayden,
 
 64 F.3d 126, 128 (3d Cir.1995).
 
 [5]
 

 III. Discussion
 

 A. Withholdings
 

 Thayer appeals his conviction for violations of I.R.C. § 7202, arguing as a matter of law he could not be found guilty of the withholding tax offenses charged. I.R.C. § 7202 penalizes “[a]ny person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax....” Thayer claims § 7202 is inapplicable because he was not a person required to pay over withheld taxes and because he truthfully accounted for the unpaid taxes.
 

 1. Person Required to Pay Over Tax
 

 As noted, only a “person required under this title to collect, account for, and pay over” withholding taxes is criminally liable under § 7202. Thayer argues that only employers such as MIS and ELOP who are required to withhold employees’ taxes under I.R.C. §§ 3402-03 qualify. Thayer contends he was merely an officer and part-owner of the corporations, and not an “employer” as defined by the Internal Revenue Code.
 
 [6]
 
 Because this is a question of statutory interpretation, we will exercise plenary review.
 
 See Parise,
 
 159 F.3d at 794;
 
 Hayden,
 
 64 F.3d at 128.
 

 I.R.C. § 6672(a), applying the same language in § 7202, imposes civil penalties on “any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax.” In
 
 Slodov v. United States,
 
 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), the Supreme Court held that § 6672(a) applies to corporate officers or employees responsible for the collection and paying over of withholding taxes.
 
 See id.
 
 at 244-45, 98 S.Ct. 1778.
 
 [7]
 
 Although the government in
 
 Slodov
 
 sought only civil penalties, the Court stated that persons civilly liable under § 6672(a) could also be held criminally liable under § 7202.
 
 See id.
 
 at 245, 247, 98 S.Ct. 1778. Thayer urges us not to follow this apparent dicta in
 
 Slodov.
 
 He contends that a corporate officer is a “person” for purposes of § 6672(a) only because § 6671(b) specifies that the term “person,” as used in I.R.C. ch. 68, subchapter B, encompassing §§ 6671-6724, “includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.” But for purposes of § 7202, the term “person” is defined by identical language.
 
 See
 
 I.R.C. § 7343 (“The term ‘person’ as used in this chapter
 
 *220
 
 [I.R.C. ch. 75, encompassing §§ 7201-7344], includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.”)- Therefore, Thayer, as the president and majority owner of MIS and ELOP, was properly charged and convicted as a “person” under § 7202.
 

 2. Truthful Accounting
 

 Thayer contends the statute imposes criminal liability only on one who neither accounts for nor pays over withholding taxes. Since he did account for the withheld funds, Thayer argues the evidence was insufficient to convict him under § 7202.
 

 As noted, § 7202 applies to one who “willfully fails to collect or truthfully account for and pay over” employees’ income taxes. Thayer and the government both interpret this language to criminalize either of two acts: (1) willful failure to collect employees’ income taxes or (2) willful failure to truthfully account for and pay over withheld taxes. Because Thayer accounted for the withheld taxes by reporting the withholdings on the corporations’ quarterly tax returns, he can be convicted only under the second prong. Therefore, the question is whether a person who collects and accounts for but does not pay over taxes has failed to account for
 
 and
 
 pay over those taxes. Because this is a question of statutory interpretation, we will exercise plenary review.
 
 See Parise,
 
 159 F.3d at 794;
 
 Hayden,
 
 64 F.3d at 128.
 

 The Court of Appeals for the Second Circuit faced the identical question and, relying on the reasoning in
 
 United States v. Brennick,
 
 908 F.Supp. 1004 (D.Mass.1995), ruled that § 7202 requires employers to both account for and pay over the taxes. The court held the plain language of the statute supported this reading: “ ‘The phrase “truthfully account for and pay over” is ... unambiguously conjunctive. A person who was required to “truthfully account for and pay over” a tax would be required to do both things to satisfy the requirement.’ ”
 
 United States v. Evangelista,
 
 122 F.3d 112, 121 (2d Cir.1997) (quoting
 
 Brennick,
 
 908 F.Supp. at 1016) (omission in original). The court also noted that a contrary interpretation “ ‘would result in a greater penalty for one who simply failed to collect trust fund taxes than for one who collect[ed] them and, as is charged here, used them for his own selfish purposes ..., so long as he notified the IRS that he had collected the tax. That Congress intended to make such a distinction is simply inconceivable.’”
 
 Id.
 
 at 121 (quoting
 
 Brennick,
 
 908 F.Supp. at 1017) (omission in original). We agree.
 

 Thayer points out that, as the Second Circuit interpreted § 7202, the phrase “willfully fails to ... truthfully account for
 
 and
 
 pay over” has the same meaning as “willfully fails to ... truthfully account for or pay over,” arguing that Congress might have exempted those who account for but do not pay over withholding taxes to encourage reporting, thereby facilitating collections. Conceding ambiguity, Thayer seeks to rely on the rule of lenity.
 
 See, e.g., United States v. Turcks,
 
 41 F.3d 893, 901 (3d Cir.1994). But “[t]he simple existence of some statutory ambiguity ... is not sufficient to warrant application of th[e] rule [of lenity], for most statutes are ambiguous to some degree.... The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended.”
 
 Muscarello v. United States,
 
 524 U.S. 125, 138, 118 S.Ct. 1911; 141 L.Ed.2d 111 (1998) (internal quotation marks and ellipses omitted).
 

 Thayer suggests a rationale why Congress might have penalized more severely those who neither report nor pay over withholding taxes than those who report but fail to pay over the taxes, but does not convincingly answer the Second Circuit’s telling analysis: that on Thayer’s reading, those who collect the taxes and spend them on personal expenses, effectively
 
 *221
 
 stealing the tax moneys, will receive no criminal penalties, whereas those who never collect the taxes at all face criminal sanctions. We agree with the Court of Appeals for the Second Circuit that Congress could not plausibly have intended Thayer’s reading of the statute.
 

 We also note the title of a section can assist in resolving ambiguities.
 
 See I.N.S. v. National Ctr. for Immigrants’ Rights, Inc.,
 
 502 U.S. 183, 189, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991). Section 7202 is entitled, “Willful failure to collect or pay over tax,” suggesting the section covers willful failure either to collect or to pay over the taxes. For the reasons stated, we hold Thayer was properly convicted under § 7202 for accounting for but failing to pay over withheld income taxes.
 

 B. Bankruptcy Fraud
 

 Thayer asserts there was insufficient evidence to convict him of bankruptcy fraud under 18 U.S.C. § 152, contending the condominium payments were not made with MIS money, but rather with ELOP money maintained in the consolidated MIS account.
 
 [8]
 
 The statute, in relevant part, penalizes one who “knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor....” 18 U.S.C. § 152(1).
 

 Although most of the condominium payments came from the consolidated MIS account, Thayer points out that his wife testified the condominium was purchased by ELOP and that CPA Gillespie testified that ELOP had sufficient funds in the consolidated account to cover the condominium payments. But the jury was free to reject Mrs. Thayer’s and CPA Gillespie’s testimony.
 
 See Ranco Indus. Prods. Corp. v. Dunlap,
 
 776 F.2d 1135, 1141 (3d Cir.1985). Although no accountant or other expert witness testified contrary to Gillespie, the jury could have concluded the funds for the condominium payments came from MIS because the checks were drawn from the consolidated MIS account at a time when ELOP maintained a separate account.
 
 [9]
 

 Thayer also argues there was no evidence he knew he had a duty as president of MIS to report MIS’ operating expenses and that such knowledge is required under 18 U.S.C. § 152. But the statute, as noted, penalizes concealment of assets, not failure to file expense reports. There was sufficient evidence from which the jury could have concluded that Thayer’s use of MIS funds to make payments on a condominium held in his name was an attempt to hide MIS’ assets from the Bankruptcy Court and the creditors.
 

 C. Jury Instructions
 

 Thayer challenges the jury instructions issued on both the false claims and the bankruptcy fraud charges. When jury instructions are challenged, “we consider the totality of the instructions and not a particular sentence or paragraph in isolation.”
 
 United States v. Coyle,
 
 63 F.3d 1239, 1245 (3d Cir.1995). The issue is “whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury.”
 
 United States v. Zehrbach,
 
 47 F.3d 1252, 1264 (3d Cir.1995) (internal quotation marks omitted). Because Thayer’s objections to the jury instructions were not made at trial, we will reverse only for plain
 
 *222
 
 error, which is found “sparingly and only where the error was sure to have had unfair prejudicial impact on the jury’s deliberations.”
 
 Id.
 
 at 1268 n. 9 (internal quotation marks omitted).
 

 1. False. Claims
 

 Early in its instructions to the jury, the court said,
 

 You determine what happened in this case, what the facts were in this case. Always focusing on the key element in all 87 counts which is willfulness. That’s where you should focus your attention.
 

 Later, the court instructed the jury on the false claims charges:
 
 [10]
 

 There are four elements, the defendants made a claim against the United States for payment. Defendants knew the claim to be false and fraudulent. The claim was made to a department or an agency of the United States and the defendants acted knowingly and willfully-
 

 There are two of the elements which are contested here. There is no question that the defendant made a claim for a refund. And ... there is no question that the claim was made to United States. That’s element one and element three. Elements two and four are hotly contested.... The Government must prove those elements beyond a reasonable doubt.
 

 ... The defendants deny those two elements. Therefore the government must prove them beyond a reasonable doubt.
 

 ... [T]he defendants urge ... they didn’t have the money to pay the withholding tax and they had been hoping to pay it, or at some time it would be paid, or they would straighten the paperwork out later and the best way to handle it was to seek a refund on the three returns filed. They’ve made other arguments against the Government on these claims, you’ll remember them and assess them....
 

 ... If you find that they intended to deceive the government and wanted to get a check, my recollection is that Mrs. Thayer denied that. She said she never really expected to get a check and thought that this was a bookkeeping kind of thing. You need to assess that.
 

 Thayer contends the court’s instruction implied that the government was not required to prove beyond a reasonable doubt that the Thayers had presented a claim against the United States.
 

 The Fifth and Sixth Amendments require the government to prove each element of a criminal charge beyond a reasonable doubt whether or not the defendant presents evidence contesting the element.
 
 See United States v. Gaudin,
 
 515 U.S. 506, 509-10, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995);
 
 Sullivan v. Louisiana,
 
 508 U.S. 275, 277-78, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). When a jury instruction is ambiguous and open to an unconstitutional interpretation, the instruction is error if there is a reasonable likelihood the jury accepted the erroneous interpretation.
 
 See Jones v. United States,
 
 527 U.S. 373, 119 S.Ct. 2090, 2115, 144 L.Ed.2d 370 (1999);
 
 Boyde v. California,
 
 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990);
 
 Frey v. Fulcomer,
 
 132 F.3d 916, 921 (3d Cir.1997),
 
 cert. denied,
 
 524 U.S. 911, 118 S.Ct. 2076, 141 L.Ed.2d 151 (1998). But because we review for plain error, we will reverse only if the ambiguity in the instruction is “sure” to have had a prejudicial effect.
 
 Zehrbach,
 
 47 F.3d at 1263 n. 9.
 

 In this case, we believe the instruction was accurate and non-prejudicial. Thayer has not contested that the court properly described the elements of the offense.
 
 See United States v. Okoronkwo,
 
 46 F.3d 426, 430 (5th Cir.1995) (giving the elements of a § 287 offense as “(1) that the defendant
 
 *223
 
 presented a false or fraudulent claim against the United States; (2) that the claim was presented to an agency of the United States; and (3) that the defendant knew that the claim was false or fraudulent”). Instead he argues that his wife’s testimony that she thought the government would automatically apply any refund to the Thayers’ existing penalty was evidence contesting the first element of the offense charged (filing a claim against the United States), contrary to the District-Court’s assertion that this issue was uncontested. We do not agree that Josephine Thayer’s testimony, if believed, could establish the Thayers did not present a claim against the United States. Rather, her testimony contested that they acted wilfully and with knowledge that their claim was false and fraudulent.
 
 See United States v. Parsons,
 
 967 F.2d 452, 456 (10th Cir.1992) (holding requests for tax refunds are covered by § 287). We hold the District Court’s instruction was neither inaccurate nor prejudicial, and in any event was not plain error.
 
 [11]
 

 2. Bankruptcy Fraud
 

 As noted, Thayer was convicted of concealing MIS’ assets from its creditors by using MIS’ funds to pay for the Thayers’ condominium in Atlantic City, effectively transferring the money from MIS to the Thayers.
 

 a. Identity of Bankrupt Corporation
 

 At trial, the Thayers argued the money used to pay for the condominium belonged to ELOP, not MIS. The court’s charge on these counts was interrupted by a question from a juror:
 

 THE COURT: The elements are:....
 

 Two, the defendant fraudulently concealed the property described in the indictment from creditors in the bankruptcy proceedings.
 

 The question here is, in the mind of the Government is, ... why was MIS’s assets being used to buy this condo? ...
 

 The Thayers’ attorneys say no way. [The court reviewed several arguments, including the attorneys’ claim] that the funds in the MIS bank account were really not MIS money, but were pooled money perhaps from ELOP or other activities of the Thayer corporations....
 

 Yes?
 

 JUROR: Just to be clear, only MIS is in bankruptcy?
 

 THE COURT: Your recollection controls and you’ll have the bankruptcy papers, but my recollection is that MIS went into bankruptcy first and then perhaps six months to nine months later ELOP went into bankruptcy.
 

 Thayer maintains the court’s reference to ELOP’s bankruptcy suggested to the jury that it could convict if it concluded the Thayers were concealing ELOP’s assets, although the indictment charged only concealment of MIS’ assets.
 

 As we have explained, “[a] federal judge is permitted to summarize and comment upon the evidence.... The court’s comments, however, may not confuse or mislead the jury, or become so one-sided as to assume an advocate’s position.”
 
 American Home Assurance Co. v. Sunshine Supermarket, Inc.,
 
 753 F.2d 321, 327 (3d Cir.1985) (ellipsis in original),
 
 quoted in Hughes v. Consol-Pennsylvania Coal Co.,
 
 945 F.2d 594, 617 (3d Cir.1991). In
 
 American Home Assurance,
 
 we held the District Court erred during the jury charge by stating that certain expert witnesses had been compensated for their testimony, when there was no such evidence in the record.
 
 See
 
 753 F.2d at 326-27. In
 
 Hughes,
 
 the defendant was accused of fraudulently inducing the plaintiffs to sell land at below-market prices. The District Court told the jury that if the defen
 
 *224
 
 dant claimed that plaintiffs’ property- could be condemned for a fixed price in the event that plaintiffs refused to sell, the defendant had “lied.” 945 F.2d at 617. We found no prejudicial error, because the court accurately summarized the evidence and informed the jury that it did not “have to be influenced” by the court’s summary.
 
 Id.) see also Haines v. Powermatic Houdaille, Inc.,
 
 661 F.2d 94, 95 (8th Cir.1981) (finding no prejudicial error where the trial judge misstated an important piece of evidence but repeatedly cautioned the jury that the court’s statements were not evidence).
 

 Here, the District Court accurately explained to the jury that the Thayers were charged with using MIS’ funds to make payments on the Atlantic City condominium and summarized the Thayers’ defense, that the money used belonged to ELOP. In response to a juror’s question, the judge accurately described the bankruptcy status of both MIS and ELOP, while reminding the jurors that their recollection, and not the court’s, controlled. We find nothing in the court’s charge that would have created or contributed to the alleged confusion, much less anything that was sure to prejudice the jury’s deliberations. Thayer did not request a curative instruction following the juror’s question and the District Court was not obliged to issue one
 
 sua sponte.
 
 We see no plain error here.
 

 b. Transfer of Assets
 

 Thayer has a second objection to the bankruptcy concealment instruction. We quote again from the jury charge:
 

 Counts 28 through 37 charge[ ] willful concealment of assets from the Bankruptcy Court. The law provides whoever knowingly and fraudulently conceals from the custodians, trustee, marshal or other officer of the bankruptcy [court] charged with the control or custody of property, or from creditors in any case in bankruptcy shall be guilty of a felony.
 

 The elements are: One, on or about the date alleged in the indictment, the proceeding in bankruptcy was in existence. That’s not in dispute.
 

 Two, the defendant fraudulently concealed the property described in the indictment from creditors in the bankruptcy proceedings.
 

 And, three, that such property belonged to the estate of the debtor.
 

 A person fraudulently conceals property of the estate of a debtor when that person knowingly withholds information or property or knowingly acts for the purpose of preventing the discovery of such property, intending to deceive or cheat a creditor, a trustee, or a custodian or a bankruptcy judge.
 

 Fraudulently concealing property of the estate of the debtor may include transferring property to a third party, destroying the property, withholding knowledge concerning the existence or whereabouts of property, or knowingly doing anything else by which the person acts to hinder, delay or defraud any of the creditors.
 

 The act of concealment does not depend on the amount or value of the property involved. It is sufficient if a substantial amount of property was knowingly and fraudulently concealed or transferred by the accused as charged in the indictment... .
 
 [12]
 

 
 *225
 
 Thayer objects to the court’s statement, “It is sufficient if a substantial amount of property was knowingly and fraudulently concealed or transferred by the accused as charged in the indictment,” contending the court suggested that simply the transfer of assets, not the transfer of assets with intent to conceal, can justify a conviction.
 

 The Thayers were indicted under 18 U.S.C. § 152. The language in the court’s jury charge mirrors that of subsection 152(1), making it unlawful to “knowingly and fraudulently conceal[ ] from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor.”
 
 [13]
 
 We believe the charge, viewed in its entirety, correctly stated the law of subsection 152(1). The District Court properly charged fraudulent concealment as an element of the offense, stating that Thayer could be convicted if found to have “knowingly and fraudulently concealed or transferred” MIS’ assets, which we have no doubt the jury understood to mean “knowingly and fraudulently concealed or [knowingly and fraudulently] transferred” MIS’ assets. The court explained that an act was fraudulent if done as part of an attempt to conceal the debt- or’s assets. We hold the District Court properly instructed the jury that Thayer could be convicted only if he transferred MIS’ assets with the intent to conceal them.
 
 See United States v. Turner,
 
 725 F.2d 1154, 1157 (8th Cir.1984) (approving of jury instructions defining “concealment” for purposes of § 152 to include “not only secreting, falsifying and mutilating ... but also ... preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known”).
 

 D. Sentencing
 

 Because Thayer’s objections to his sentence were raised before the District Court, we review the court’s factual findings for clear error and its interpretation of the guidelines de novo.
 
 See United States v. Felton,
 
 55 F.3d 861, 864 (3d Cir.1995).
 

 1. Grouping
 

 As noted, the District Court grouped the bankruptcy convictions separately from the tax offenses at sentencing. Thayer contends U.S.S.G. § 3D1.2(b) (1998) required the District Court to group all the offenses. Section 3D1.2(b) mandates grouping “[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.” In this case, we do not believe the first requirement was met, namely that the victims of the crimes be the same. Therefore, we agree with the District Court that grouping under § 3D1.2(b) was inappropriate here.
 

 As Thayer concedes, the United States was the only victim of the tax fraud counts, and the IRS was a creditor and therefore a victim of the bankruptcy-assets concealment count. Although MIS had 24 creditors, Thayer notes the sentencing guide
 
 *226
 
 lines’ commentary explain, “[Generally, there will be one person ... identifiable as the victim” because “ ‘victim’ is not intended to include indirect or secondary vic-tims_” U.S.S.G. § 3D1.2(b), comment. (n.2). He argues that the United States was the primary victim and therefore the sole victim for grouping purposes, and the rest of the victims were secondary. According to MIS’ Chapter 11 petition, prepared by the Thayers, MIS’ federal tax debt at the time of bankruptcy was $480,-000, representing approximately 73% of MIS’ total debt and 96% of its debt to priority creditors. Nevertheless, in this case we find there were multiple victims of Thayer’s concealment.
 

 Grouping is determined according to the primary victim Congress sought to protect in enacting a statute.
 
 See United States v. Ketcham,
 
 80 F.3d 789, 793 (3d Cir.1996). 18 U.S.C. § 152 is “a congressional attempt to cover all of the possible methods by which a debtor or any other person may attempt to defeat the intent and effect of the bankruptcy law through any type of effort to keep assets from being equitably distributed among creditors.”
 
 United States v. Goodstein,
 
 883 F.2d 1362, 1369 (7th Cir.1989) (internal quotation marks omitted);
 
 see also Stuhley v. Hyatt,
 
 667 F.2d 807, 809 n. 3 (9th Cir.1982) (holding that Congress’ principal objective in enacting § 152 was “to prevent and punish efforts by a bankrupt to avoid the distribution of any part of a viable bankrupt estate”);
 
 United States v. Shapiro,
 
 101 F.2d 375, 379 (7th Cir.1939) (“The object of Congress in passing [the predecessor to § 152] was to punish those debtors who, although wanting relief from their debts, did not want to surrender what property there was to creditors.”). All creditors benefit from the integrity of the bankruptcy system, which guarantees that to the maximum extent feasible the bankrupt’s debts will be repaid. Accepting Thayer’s representations in MIS’ bankruptcy petition as true, MIS owed .more than $150,000 to 22 creditors (excluding the IRS and the Pennsylvania Department of Revenue), including debts of $26,064, $15,315, and $10,250 to various individual creditors. These are substantial sums, and we cannot describe these creditors as “secondary” victims of Thayer’s fraudulent concealment.
 
 Cf. United States v. Nazifpour,
 
 944 F.2d 472, 474 (9th Cir.1991) (finding all creditors to be victims of bankruptcy fraud for purposes of U.S.S.G. § 2Fl.l(b)(2)(B), which enhances the sentence of a defendant who defrauds more than one victim). Because the victims of the bankruptcy and tax offenses were not the same, the District Court properly refused to group Thayer’s bankruptcy and tax offenses under § 3D1.2(b).
 
 [14]
 

 2. Enhancement for Violation of Judicial Process
 

 The District Court enhanced Thayer’s sentence by two levels for “violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines.... ” U.S.S.G. § 2Fl.l(b)(4)(B) (1998). The District Court relied on the probation office’s finding, asserted by the government, that such an enhancement is appropriate whenever a defendant is convicted of concealing assets in a bankruptcy case. Thayer argues the enhancement can be given only when a specific court order is violated.
 

 Several courts of appeals have taken the position now advanced by the government. Most have reasoned that a bankruptcy proceeding constitutes a “judicial ... process” under § 2Fl.l(b)(4)(B), a process violated by concealment of assets. As the Court Appeals for the Eighth Circuit explained,
 

 Lloyd [the debtor] did not violate a specific judicial order, injunction, or decree; however, Lloyd did violate a judicial process by fraudulently concealing assets from the bankruptcy court officers.
 
 *227
 
 Lloyd sought protection from his creditors under the shelter of bankruptcy when he filed his Chapter 11 petition. Lloyd then abused the bankruptcy process and hindered the orderly administration of bankruptcy estate by concealing assets.
 

 United States v. Lloyd,
 
 947 F.2d 339, 340 (8th Cir.1991) (per curiam);
 
 accord United States v. Guthrie,
 
 144 F.3d 1006, 1010-11 (6th Cir.1998);
 
 United States v. Messner,
 
 107 F.3d 1448, 1457 (10th Cir.1997);
 
 United States v. Welch,
 
 103 F.3d 906, 908 (9th Cir.1996) (per curiam);
 
 United States v. Michalek,
 
 54 F.3d 325, 332-33 (7th Cir.1995). Some courts have applied the enhancement on a separate theory, holding the Bankruptcy Rules and Forms constitute orders of the court:
 

 Black’s Law Dictionary defines the word “order” as follows: “A mandate; precept; command or direction authoritatively given; rule or regulation.” The mandate of the Bankruptcy Rules and Official Forms that a debtor truthfully disclose assets and liabilities falls within this definition. Moreover, the mandate is in the context of formal, adversary court proceedings, and Bellew [the debt- or] necessarily knew that he was violating the mandate when he signed the declarations required by Form Numbers 1 and 6.
 

 United States v. Bellew,
 
 35 F.3d 518, 520-21 (11th Cir.1994) (per curiam) (footnote omitted);
 
 accord Michalek,
 
 54 F.3d at 332-33;
 
 United States v. Saacks,
 
 131 F.3d 540, 545 (5th Cir.1997). Several of these courts have emphasized the broad applicability of U.S.S.G. § 2F1.1, the base offense provision for fraud, and the need to punish bankruptcy fraud more severely than other types of fraud:
 

 [I]n neither § 2F1.1 nor any other section of the Guidelines is there either a base offense level or an enhancement provision for bankruptcy fraud as such. Consequently, were we to stop with the general sentencing provisions for fraud, we would fail to make any distinction between the most pedestrian federal fraud offense and bankruptcy fraud with all of its implications of a scheme to dupe the bankruptcy court, the trustee, and the creditor or creditors of the debt- or, i.e., the entire federal system of bankruptcy.
 

 Saacks,
 
 131 F.3d at 543-44;
 
 accord Guthrie,
 
 144 F.3d at 1010 (“[T]he Sentencing Guidelines’ fraud provision is a very broad guideline encompassing a wide variety of offenses; because bankruptcy fraud involves a higher level of culpability due to its deception of the court, the offense warrants a greater punishment.”);
 
 Michalek,
 
 54 F.3d at 332.
 

 Although these arguments have merit, we are not convinced. Instead we are persuaded by the analyses of the Courts of Appeals for the First and Second Circuits.
 
 See United States v. Shadduck,
 
 112 F.3d 523, 530 (1st Cir.1997) (reaching only the claim that the Bankruptcy Rules and Forms constitute orders of the court);
 
 United States v. Carrozzella,
 
 105 F.3d 796, 800 (2d Cir.1997) (expressing “skepticism” about the enhancement of bankruptcy fraud cases under § 2Fl.l(b)(4)(B), but ultimately reversing on other grounds). Both courts relied in part on the commentary to § 2Fl.l(b)(4)(B), which, in its current form, explains that the section
 

 provides an adjustment for violation of any judicial or administrative order, injunction, decree, or process. If it is established that an entity the defendant controlled was a party to the prior proceeding, and the defendant had knowledge of the prior decree or order, this provision applies even if the defendant was not a specifically named party in that prior case.
 

 U.S.S.G. § 2F1.1, comment, (n.6).
 

 The comment’s reference to “the prior decree or order” seems to suggest that the drafters expected this subsection to be applied only to defendants who violated an order arising out of a previous judicial proceeding, although this is unclear. But
 
 *228
 
 the crucial inquiry here appears to focus on the proper interpretation of the term “judicial process.” While this term could be read to encompass an entire judicial proceeding, e.g. the entire bankruptcy proceeding, it seems more likely it was intended to be applied in a more circumscribed manner.
 

 As the Second Circuit reasoned,
 

 “Violation” strongly suggests the existence of a command or warning followed by disobedience. This analysis in turn suggests that the term “process”' — 'the command or warning violated — is used, not in the sense of legal proceedings generally, but in the sense of a command or order to a specific party, such as a summons or execution issued in a particular action. This narrower reading of Section [2Fl.l(b)(4)(B) ] is also consistent with the general practice— known as ejusdem generis — of construing general language in an enumeration of more specific things in a way that limits the general language to the same class of things enumerated. In the present circumstances, the word “process” follows “injunction, order, [or] decree” and is most easily read in the narrower sense of a command or order issued to a specific person or party.
 

 Carrozzella,
 
 105 F.3d at 800 (citations omitted, second alteration in original). We agree.
 

 We also agree with the Court of Appeals for the First Circuit that the Rules and Forms of the Bankruptcy Court in the sentencing context are not judicial orders, injunctions, decrees, or processes. The Bankruptcy Rules and Forms have more in common with statutes and procedural rules of general application than with orders of the court, which are directed to identified parties and indicate in specific terms what those parties are required to do.
 
 See Shadduck,
 
 112 F.3d at 530.
 

 In reaching its holding, the Court of Appeals for the First Circuit looked to the commentary guidelines for assistance, which provide:
 

 A defendant who has been subject to civil or administrative proceedings for the same or similar fraudulent conduct demonstrates aggravated criminal intent and is deserving of additional punishment for not conforming with the requirements of judicial process or orders issued by federal, state, or local administrative agencies.
 

 U.S.S.G. § 2F1.1, comment, (backg’d.). The Court of Appeals for the First Circuit found the commentary supported its conclusion that the violation of a bankruptcy rule does not require an enhancement under U.S.S.G. § 2Fl.l(b)(4)(B):
 

 The accompanying exemplar describes a defendant who has been enjoined in a prior proceeding from engaging in certain conduct, but who violated the injunction anyway by committing the fraud for which he was awaiting sentence. (Citation omitted). Thus, the commentary makes clear that the rationale for the enhancement is to redress the “aggravated criminal intent” inherent in violating a prior order specifically enjoining the defendant, or any entity the defendant controlled, from engaging in fraudulent conduct which formed the basis for the offense of conviction. U.S.S.G. § 2F1.1, comment, (backg’d).
 

 Shadduck,
 
 112 F.3d at 529. We concur. Nothing in the guidelines suggests the drafters intended as a general matter to sentence bankruptcy fraud more strictly than other types of fraud. Therefore, we find the enhancement granted here is not appropriate under § 2Fl.l(b)(4)(B).
 
 [15]
 

 S. Harmless Error
 

 The government contends that if Thayer’s sentence was inappropriately en
 
 *229
 
 hanced under § 2F1.1(b)(4)(B), the error was harmless. Thayer’s offense level, as calculated by the District Court, was 19. The court departed downward six levels to offense level 13, resulting in a sentencing range of 18-24 months, and sentenced Thayer to the minimum, 18 months. The government’s assertion of harmless error is based on
 
 United States v. Vitale,
 
 159 F.3d 810 (3d Cir.1998), in which the District Court refused to group the defendant’s convictions at sentencing but gave a “substantial” downward departure. We found no error in sentencing but indicated that any error would have been harmless because the defendant “has shown nothing in the record to support his view that the district court would have departed yet further had grouping been utilized.”
 
 Id.
 
 at 815;
 
 see also United States v. Dutcher,
 
 8 F.3d 11, 12-13 (8th Cir.1993) (declining to remand after finding the District Court selected an inappropriately high sentencing range because the court departed downward below the proper range and “we are not persuaded that the District Court necessarily would have imposed a lower sentence”).
 

 The government contends remand is unnecessary here because Thayer cannot demonstrate the District Court would grant another six-level downward departure to offense level 11, rather than departing downward by four levels and placing Thayer in offense level 13 again. The government also argues Thayer cannot establish his sentence would be reduced on remand even if the District Court were to grant a six-level downward departure, because Thayer’s sentencing range at offense level 11 would be 12-18 months, permitting the District Court to re-impose an 18-month sentence.
 

 We are skeptical of the government’s interpretation which appears to assign to defendants the burden of rebutting assumptions of harmless error in these kinds of cases. 18 U.S.C. § 3742(f)(1) specifies, “If the Court of Appeals determines that the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case.... ” In
 
 Williams v. United States,
 
 503 U.S. 193, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992), the Supreme Court addressed the possibility of harmless sentencing error in light of this statutory language. The District Court there departed upward based on two factors, one of which the Court of Appeals for the Seventh Circuit held’ to be error. The Court of Appeals nevertheless affirmed, finding the remaining ground cited by the District Court was sufficient to justify the departure. The Supreme Court agreed that one of the grounds for the departure was impermissible but remanded to the Court of Appeals for reconsideration of the decision not to remand for re-sentencing, explaining,
 

 Section 3742(f)(1) does not call for a remand every time a sentencing court might misapply a provision of the Guidelines; rather, remand is required only if the sentence was “imposed as a result of an incorrect application” of the Guidelines .... When a district court has intended to depart from the guideline range, a sentence is imposed “as a result of’ a misapplication of the Guidelines if the sentence would have been different but for the district court’s error....
 

 We conclude that the party challenging the sentence on appeal, although it bears the initial burden of showing that the district court relied upon an invalid factor at sentencing, does not have the additional burden of proving that the invalid factor was determinative in the sentencing decision. Rather, once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court’s selection of the sentence imposed.
 

 If the party defending the sentence persuades the court of appeals that the
 
 *230
 
 district court would have imposed the same sentence absent the erroneous factor, then a remand is not required....
 

 Id.
 
 at 202-03, 112 S.Ct. 1112 (citations omitted).
 

 In
 
 United States v. Tello,
 
 9 F.3d 1119 (5th Cir.1993), the Court of Appeals for the Fifth Circuit held the District Court had erred in failing to reduce the defendant’s offense level by one point under § 3El.l(b) for acceptance of responsibility, causing the court to apply the wrong sentencing range to the defendant. The government argued the sentencing error had been harmless because the sentence the District Court imposed was within both the sentencing range the District Court actually used and the range it should have used. The Court of Appeals held the government had the burden of establishing harmless error under
 
 Williams:
 

 The
 
 [Williams]
 
 Court pronounced that the finding of an incorrect application of the Guidelines shifts the burden to the proponent of the sentence — whether that be the defendant or the government — to “persuade! ] the court of appeals that the district court would have imposed the same sentence absent the erroneous factor.” ... [W]e appl[y] the Court’s
 
 Williams
 
 standard in determining generally whether a misapplication of the Guidelines automatically requires remand for resentencing.
 

 Id.
 
 at 1129 (second alteration in original). Because the government had not met its burden, the court remanded for re-sentencing.
 
 See id.
 
 at 1131.
 

 Under Williams, we remand “unless [we] conclude, on the record as a whole, that ... the error did not affect the district court’s selection of the sentence imposed!,]” a standard the government cannot meet here. Nor can we agree that Thayer “has shown nothing in the record” supporting the conclusion that the District Court, on remand, would impose a lesser sentence. The District Court explained its downward departure at sentencing:
 

 Both Thayers were very active in their community. Both Thayers were entrepreneurs trying to generate jobs and economic development in this area_[T]hey were the victims of incredible bad luck, coupled with some incredible bad judgment in their business operations.
 

 The seriousness of the offense in regards to Mr. Thayer precludes me from imposing a probationary sentence. Personally, I like you Mr. Thayer, but this has just gone too far and is too serious and it[’]s hurt the taxpayers too much.
 

 According to the government, the District Court considered 18 months incarceration the proper sentence in Thayer’s case and departed downward six levels in order to obtain that sentence. That may be so, but it is not clear from the record. Although the court stated that it would not impose a sentence of probation, it might have believed Thayer’s case warranted a six-level departure and then imposed a sentence at the bottom of the range. As has been noted, a sentencing court sometimes will approach the Guidelines with a “tentative view” of the sentence appropriate to the case before it and impose that sentence if permissible under the Guidelines but may also select a sentence based on its position within the range specified by the Guide-fines.
 
 See United States v. Bermingham, 855
 
 F.2d 925, 934-35 (2d Cir.1988). If Thayer’s interpretation of the District Court’s explanation for its departure is correct, the court might depart downward by the same six levels on remand and again select the shortest sentence in the resulting range, 12 months incarceration. We cannot determine on appeal which interpretation of the District Court’s remarks is accurate, but the record support for the possibility Thayer would have received a shorter sentence but for the § 2Fl.l(b)(4)(B) enhancement is sufficient to require remand. The government did not meet its burden here of demonstrating harmless error.
 

 
 *231
 

 IV. Conclusion
 

 For the reasons given, we will affirm Thayer’s convictions but will vacate the judgment of sentence and remand for further proceedings consistent with this opinion.
 

 [1]
 

 . William Thayer and Josephine Thayer owned 80% and 20% respectively and were President and Secretary respectively of both corporations.
 

 [2]
 

 . MIS had 28 employees; ELOP had 16 employees.
 

 [3]
 

 . The government has argued the motions were untimely. But the District Court noted that the Thayers had requested, and were granted, additional time to file.
 
 United States v. Thayer,
 
 1998 WL 195940, at n. 2 (E.D.Pa.1998).
 

 [4]
 

 . Mrs. Thayer was sentenced to five years probation,
 

 [5]
 

 . Following the denial of the motions, Thayer obtained different defense counsel. In his appeal to this Court, Thayer raises issues not raised in the earlier Rule 29(c) and Rule 33 motions. Our standard of review will vary accordingly.
 

 [6]
 

 . The Code defines "employer" as "the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person....” I.R.C. § 3401. "Employee” is defined to include corporate officers.
 
 See id.
 

 [7]
 

 .We have applied the Court’s holding in assessing civil penalties under § 6672 many times.
 
 See, e.g., Greenberg v. United States,
 
 46 F.3d 239, 242-44 (3d Cir.1994);
 
 Quattrone Accountants, Inc. v. I.R.S.,
 
 895 F.2d 921, 927 (3d Cir.1990).
 

 [8]
 

 . Because this issue was properly raised before the District Court, we will review for sufficiency of evidence, and will affirm unless we find that the record contains no evidence from which the jury could find guilt beyond a reasonable doubt.
 
 See Anderson,
 
 108 F.3d at 481.
 

 [9]
 

 . Mr. Marvin, president of Lehigh Bank at all times relevant herein, testified that the ELOP account contained substantial funds during the time when MIS was in Chapter 11 bankruptcy.
 

 [10]
 

 . 18 U.S.C. §§ 287 and 2.
 

 [11]
 

 . Thayer also makes a separate objection, that the trial judge mischaracterized Josephine Thayer’s testimony. After review, we reject his argument.
 

 [12]
 

 . The Court's charge continued:
 

 The question here is, in the mind of the Government is, since this came out of the MIS checking account and since MIS was in a Chapter 11 reorganization at that time, what was MIS's asset, why was MIS's assets being used to buy this condo? The Government suggests that it was fraudulent in that there was an attempt here to conceal the assets, to transfer them out of the bankruptcy estate away from the creditors and to keep the creditors from enjoying the benefits of the amounts of money that were transferred to Kalustyan Corporation.
 

 The Government says guess what happened, the Thayers end up owning a condo, the Government suggests that the Thayers end up using a condo in Atlantic City now
 
 *225
 
 owned by a corporation about which we have little information. And the Government suggests that this was intentional, deliberate and fraudulent. And the Government says to you that its proved that beyond a reasonable doubt.
 

 The Thayers' attorneys say no way. They say that the condo was a corporate asset, intended to be a corporate asset and was used in corporate business substantially. That weekend use by family members is something to be expected of corporate assets and is certainly not fraud by the furth-
 

 est stretch of the imagination. They say that there was an assignment of Thayer’s interest in this condo to the ELOP Corporation and they say finally that the funds in the MIS bank account were really not MIS money, but were pooled money perhaps from ELOP or other activities of the Thayer corporations and was not a diversion of assets from the Bankruptcy Court.
 

 [13]
 

 . The court quoted subsection 152(1) almost verbatim at the beginning of the charge.
 

 [14]
 

 . Because Thayer has not established that there was a single victim, we do not need to reach the common scheme or plan element required for grouping.
 

 [15]
 

 . Of course, violation of a specific order in a bankruptcy proceeding could constitute a violation of “judicial process” as contemplated in § 2F1.1(b)(4)(B). Like the Court of Appeals for the First Circuit, we do not foreclose the district courts’ option to depart upward under U.S.S.G. § 5K2.0 in appropriate cases of bankruptcy fraud, see
 
 id.
 
 at 530 n. 12.