**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1259
_____

ARMEL BAXTER,
Appellant

v.

SUPERINTENDENT COAL TOWNSHIP SCI; DISTRICT
ATTORNEY PHILADELPHIA; ATTORNEY GENERAL
PENNSYLVANIA


_____


Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-00046)
District Judge:  Honorable J. Curtis Joyner
_____

Submitted under Third Circuit L.A.R. 34.1(a)
March 15, 2021
_____

Before: SHWARTZ, PORTER, and MATEY, Circuit Judges.

(Filed:  April 8, 2021)

Daniel A. Silverman
Suite 2500
123 South Broad Street
Philadelphia, PA 19109

      Counsel for Appellant

David Napiorski
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107

Ronald Eisenberg
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300 Philadelphia, PA 19103

      Counsel for Appellees

_____

OPINION
_____

SHWARTZ, Circuit Judge.

Armel Baxter was convicted of first-degree murder, criminal conspiracy, and possession of an instrument of crime in Pennsylvania state court. Baxter filed a federal habeas petition, asserting that his trial counsel was ineffective for failing to object to the trial court's reasonable doubt jury

instruction.[1]  The District Court denied Baxter's petition, but issued a certificate of appealability.  Because the reasonable doubt instruction did not prejudice Baxter, we will affirm.

I

A

On a warm April 2007 afternoon, Demond Brown was shot and killed at a playground in Philadelphia.  Two eyewitness accounts and a corroborating witness implicated Baxter and his co-defendant Jeffrey McBride as the shooters.  The two eyewitnesses, Hassan Durant and Anthony Harris, saw Baxter and McBride enter the playground wearing hooded sweatshirts.  Brown noticed the pair and began to run.  The pair then shot Brown eight to ten times and ran away.  Durant and Harris knew Baxter from living in the same neighborhood.

Rachel Marcelis, a friend of Baxter and McBride, confirmed Baxter and McBride's presence at the playground and their roles in the shooting.  On the day of the incident, Marcelis drove by the playground with McBride and Baxter in her car.  Either McBride or Baxter said they saw someone at the playground and told her to stop to let them out of the car, and she did so.  She thereafter noticed many people running from the playground, including Baxter and McBride.  Baxter and McBride got back into the car and said that "they got him" and that McBride "didn't have the chance to shoot" because his gun did not work.  J.A. 158, 160.  McBride later told Marcelis that Brown had killed their good friend.  That

---

[1] Baxter raised other issues, but we focus on the sole claim for which a certificate of appealability was issued.

weekend, Marcelis drove Baxter and McBride to Wilkes-Barre, Pennsylvania.  Marcelis returned to Philadelphia a few days later, but McBride and Baxter stayed in Wilkes-Barre until their arrests.[2]  When law enforcement first confronted Baxter in Wilkes-Barre, Baxter gave three false names.

B

Baxter was charged with first-degree murder, 18 Pa. Cons. Stat. § 2502(a); criminal conspiracy to engage in murder, id. § 903(a)(1); and first-degree possession of an instrument of a crime with intent to employ it criminally, id. § 907(a). Durant, Harris, and Marcelis testified at his trial.

At issue in this appeal is the trial judge's reasonable doubt instruction.  The trial judge first explained that the Commonwealth's burden of proof is "beyond a reasonable doubt," which is "the highest standard in the law," and is "the only standard that supports a verdict of guilty."  J.A. 34.  The trial judge stated that the Commonwealth "is not required to meet some mathematical certainty" or "to demonstrate the complete impossibility of innocence."  J.A. 34.  Instead, the trial judge explained that reasonable doubt is "a doubt that would cause a reasonably careful and sensible person to pause, to hesitate, to refrain from acting upon a matter of the highest

---

[2] At trial, Baxter's lawyer attempted to impeach Marcelis by suggesting that she imagined the events as the result of drugs and alcohol she consumed the night before the shooting.  Marcelis admitted to using drugs and not sleeping that night but testified that she did not imagine the events or conversations with McBride and Baxter.

4

importance to your own affairs or to your own interests." J.A. 34.

The judge then provided an example for how to think about reasonable doubt:

> If you were advised by your loved one's physician that that loved one had a life-threatening illness and that the only protocol was a surgery, very likely you would ask for a second opinion. You'd probably get a third opinion. You'd probably start researching the illness, what is the protocol, is surgery really the only answer. You'd probably, if you're like me, call everybody you know in medicine: What do you know about this illness? What do you know about this surgery? Who does this surgery across the country? What is my option.

> At some moment, however, you're going to be called upon to make a decision: Do you allow your loved one to go forward? If you go forward, it's because you have moved beyond all reasonable doubt.

J.A. 34. The judge then explained that "a reasonable doubt must be a real doubt" and "may not be a doubt that is imagined or manufactured to avoid carrying out an unpleasant responsibility." J.A. 34. Defense counsel did not object to the instruction.

A jury convicted Baxter on all charges, and Baxter was sentenced to life in prison without parole for first-degree

5

murder, and concurrent terms of ten-to-twenty years' imprisonment for conspiracy and one-to-two years' imprisonment for instrument possession.

The Pennsylvania Superior Court affirmed Baxter's conviction, Commonwealth v. Baxter, 996 A.2d 535 (Pa. Super. Ct. 2010), and the Pennsylvania Supreme Court denied review, Commonwealth v. Baxter, 17 A.3d 1250 (Pa. 2011). Baxter filed a pro se petition and amended petition under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 et seq., raising several arguments challenging the effectiveness of his trial counsel, but not challenging counsel's failure to object to the reasonable doubt jury instruction. The PCRA court denied Baxter's petition, the Pennsylvania Superior Court affirmed, Commonwealth v. Baxter, 159 A.3d 589 (Pa. Super. Ct. 2016), and the Pennsylvania Supreme Court denied review, Commonwealth v. Baxter, 169 A.3d 547 (Pa. 2017).

Baxter petitioned for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania, arguing for the first time that his trial counsel was ineffective for failing to object to the trial court's reasonable doubt instruction.[3] The Magistrate Judge concluded that his claim was meritless because "[a]lthough the contested instruction is inartful and its illustration inapt," jury instructions should be viewed in their entirety, and here, the instruction read as a whole was constitutional. Baxter v.

---

[3] Despite Baxter's failure to raise this ineffective assistance of counsel claim until his petition for a writ of habeas corpus, the Commonwealth does not argue that Baxter's claim is procedurally barred.

6

McGinley, No. 18-cv-46, 2019 WL 7606222, at *5-6 (E.D. Pa. Dec. 5, 2019) (citing Supp. Report & Recomm., Corbin v. Tice, No. 16-4527 (E.D. Pa. Jan. 15, 2019), ECF No. 42). Accordingly, the Magistrate Judge recommended that the petition for writ of habeas corpus be denied with prejudice. Id. at *10.

The District Court adopted the Magistrate Judge's Report and Recommendation, but found that there was probable cause to issue a certificate of appealability on Baxter's ineffective assistance of counsel claim based on his trial counsel's failure to object to the trial court's reasonable doubt instruction. Baxter appeals.

II[4]

A

Because Baxter's ineffective assistance of counsel claim regarding the constitutionality of the reasonable doubt instruction was not adjudicated on the merits in state court, we need not apply the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d). Rather, our review of the state court's legal determinations is plenary. Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). Because the District Court did not hold an evidentiary hearing, our review of its decision is plenary. Ross v. Dist. Att'y of the Cnty. of Allegheny, 672 F.3d 198, 205 (3d Cir. 2012).

---

[4] The District Court had jurisdiction under 28 U.S.C. § 2254. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

B

Baxter argues that his counsel was ineffective for failing to object to the reasonable doubt instruction. Normally, we would review an ineffective assistance claim under Strickland v. Washington, 466 U.S. 668, 687 (1984), which requires that we consider whether the failure to object fell below the standards for competent representation and whether that failure resulted in prejudice.

We will assume that the failure to object to the instruction fell below the standard for competent representation,[5] and thus focus on the prejudice issue. Under Strickland, to establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Baxter, however, contends that he need not prove actual prejudice because the failure to

---

[5] Although the Commonwealth does not challenge whether the failure to object to the instruction fell below the standard of competent representation, there are persuasive arguments that the instruction, read in its entirety, did not violate due process and thus justified counsel's decision not to object to the instruction. See Supp. Report & Recomm. Corbin, No. 16-4527, ECF No. 42 (collecting cases and upholding identical jury instructions because "in evaluating a challenge to jury instructions, the court must 'consider the totality of the instructions and not a particular sentence or paragraph in isolation'" (quoting United States v. Thayer, 201 F.3d 214, 221 (3d Cir. 1999))). We, however, need not decide this issue in this case.

8

object to the reasonable doubt jury instruction led to a structural error, and such errors so fundamentally impact the trial process that prejudice is presumed.  We will therefore discuss the concept of structural error and whether prejudice is always presumed.

The Supreme Court has defined a structural error as one that "affect[s] the framework within which the trial proceeds, rather than being simply an error in the trial process itself." Weaver v. Massachusetts, 137 S. Ct. 1899, 1907 (2017) (alteration in original) (quotation marks and citation omitted). The Court has identified the following as structural errors: (1) complete deprivation of the right to counsel; (2) lack of an impartial judge; (3) unlawful exclusion of grand jurors of the defendant's race; (4) denial of the right to self-representation at trial; (5) denial of the right to a public trial; and (6) an erroneous reasonable doubt jury instruction.  See Johnson v. United States, 520 U.S. 461, 468-69 (1997) (collecting cases); Lewis v. Pinchak, 348 F.3d 355, 358 (3d Cir. 2003).

The Supreme Court has stated that  "the . . . doctrines [of structural error and ineffective assistance of counsel] are intertwined; for the reasons an error is deemed structural may influence the proper standard used to evaluate an ineffective-assistance claim premised on the failure to object to that error." Weaver, 137 S. Ct. at 1907.  A showing of structural error, however, does not always trigger a presumption of prejudice.  For example, in Weaver, the Supreme Court examined a structural error related to the right to a public trial, closing the courtroom during jury selection, and whether that error triggered a presumption of prejudice.  137 S. Ct. at 1905. The petitioner argued that he need not show prejudice, as his attorney's failure to object to the courtroom closure (the

9

structural error) rendered the trial "fundamentally unfair." Id. at 1911.

The Court stated that it would "assume," "[f]or the analytical purposes of th[e] case," "that petitioner's interpretation of Strickland is the correct one," but, in light of its ultimate holding, it wrote that it "need not decide that question here." Id. The Court concluded that, even under the petitioner's theory, while some deprivations of the right to a public trial might not require proof of actual prejudice, others do require such proof. See id. at 1908 ("[T]he question is whether a public-trial violation counts as structural because it always leads to fundamental unfairness or for some other reason."). The Court noted that closing voir dire is not akin to closing the part of trial where the evidence is being adduced, and thus prejudice was not presumed.[6] See id. at 1913

---

[6] Contrary to Baxter's argument, Weaver did not establish that an erroneous reasonable doubt instruction is a structural error that warrants presumptive prejudice. In Weaver, the Supreme Court acknowledged that its holding did not call into question precedents determining that certain structural errors, such as an erroneous jury instruction, require automatic reversal if raised on direct appeal. 137 S. Ct. at 1911-12 (citing, e.g., Sullivan v. Louisiana, 508 U.S. 275, 278-79 (1993)). Furthermore, the Court declined to address, in the context of structural errors other than the one at issue in Weaver, "whether the result should be any different if the errors were raised instead in an ineffective-assistance claim on collateral review," as is the case here. Id. at 1912; see also id. at 1907 (limiting the holding to "the context of trial counsel's failure to object to the closure of the courtroom during jury selection").

(explaining that some circumstances might warrant a presumption of prejudice, such as if "defense counsel errs in failing to object when the government's main witness testifies in secret"). Assuming without deciding that an inartful or partially incorrect reasonable doubt instruction constitutes a structural error, and, like the Weaver Court, "that prejudice can be shown by a demonstration of fundamental unfairness," we will apply a similar approach to evaluate whether such an error triggers the presumption of prejudice. Id. at 1913. The complete failure to give such an instruction is a structural error that so infects the trial process that the verdict cannot be said to reflect a proper verdict in a criminal case. See Sullivan v. Louisiana, 508 U.S. 275, 281 (1993) (stating that "[d]enial of the right to a jury verdict of guilt beyond a reasonable doubt" is a "structural defect[] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards" (citation and internal quotation marks omitted)). In such circumstances, "the resulting trial is always a fundamentally unfair one." Weaver, 137 S. Ct. at 1908 (citing Sullivan, 508 U.S. at 279). When a reasonable doubt instruction is given, however, the rules concerning evaluating a jury instruction apply. United States v. Isaac, 134 F.3d 199, 204 (3d Cir. 1998). These rules "do[] not require that any particular form of words be used in advising the jury of the government's burden of proof." Victor v. Nebraska, 511 U.S. 1, 5 (1994). Instead, the rules require examining the language in its totality and determining whether the instructions correctly captured the applicable legal concepts. Isaac, 134 F.3d at 204 (upholding a reasonable doubt instruction because although part of the instruction was erroneous, "this defect was counterbalanced by the explanation that preceded and succeeded it"). In the context of an ineffective assistance of counsel claim, if we conclude that the instruction contains an

11

error, we then examine whether the instruction resulted in actual prejudice.[7]

Here, Baxter contends, and the Commonwealth does not dispute, that the instruction contained an example that impacted the accuracy of the jury instruction. Even if the example used in the instruction improperly cast the reasonable doubt standard, the surrounding language correctly expressed the standard. Moreover, the evidence against Baxter shows that even the inapt example did not prejudice him. See Buehl v. Vaughn, 166 F.3d 163, 171-72 (3d Cir. 1999) (concluding that "[i]n view of the magnitude of the evidence that the Commonwealth presented," the defendant could not show he was prejudiced by the absence of a limiting instruction).

---

[7] This approach is similar to how we examine various claims of ineffective assistance of counsel. For example, in United States v. Cronic, 466 U.S. 648, 658 (1984), the Supreme Court noted that prejudice is presumed when (1) there is complete denial of counsel, (2) counsel fails to subject the prosecution's case to meaningful adversarial testing, or (3) there is a very small likelihood that even a fully competent counsel could provide effective assistance. Id. at 659-60; see also Bell v. Cone, 535 U.S. 685, 695-96 (2002) (same). When, however, counsel makes an isolated error during the trial, such as failing to object to a jury instruction, the defendant must show actual prejudice to prevail on a claim of ineffective assistance of counsel. See Strickland, 466 U.S. at 695-96 (distinguishing errors that have an "isolated, trivial" effect and do not affect factual findings from those that have a pervasive effect that therefore result in a "breakdown in the adversarial process"). Thus, not all errors involving the actions of counsel trigger a presumption of prejudice.

12

Various eyewitnesses who were in close proximity of and who knew Baxter for years testified that Baxter and McBride chased Brown and repeatedly shot him. Baxter's friend Marcelis corroborated the eyewitness accounts with her report of driving Baxter and McBride to the playground, hearing their incriminating remarks after the shooting and their motive for it, and their flight to Wilkes-Barre.[8] This flight, together with Baxter's use of false names when he encountered law enforcement after the murder, provided a basis to infer a consciousness of guilt. In light of this evidence, Baxter cannot show he was prejudiced by the phrasing of the example in an otherwise correct reasonable doubt jury instruction. See Saranchak v. Secretary, Pa. Dep't of Corrs., 802 F.3d 579, 592 (3d Cir. 2015) (concluding that trial errors "did not contribute to a reasonable probability of a different outcome given the strength of the Commonwealth's case"). Accordingly,

---

[8] Baxter's challenges to the strength of the evidence are not persuasive. First, although Baxter notes that Durant had an open drug case at the time he testified, there was no promise he would reason favorable treatment in that case in exchange for his testimony against Baxter. Next, Baxter relies upon testimony at the PCRA hearing to argue that Harris identified a different shooter. Because this evidence was not presented at trial, we cannot consider it to determine prejudice. See Berghuis v. Thompkins, 560 U.S. 370, 389 (2010) ("In assessing prejudice, courts must consider the totality of the evidence before the judge or jury." (quotation marks and citations omitted)). His efforts to undermine Marcelis testimony also fail. The jury had sufficient evidence to reject his argument that Marcelis imagined the events about which she testified given her testimony that, while she used drugs the night before, she had a clear recollection of the events.

13

Baxter's counsel's failure to object to the reasonable doubt instruction did not prejudice him, and thus he cannot show he was deprived of effective assistance of counsel.

## III

For the foregoing reasons, we will affirm.