**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 19 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RONALD ROE MESSNER,

    Defendant-Appellant.

No. 96-3146

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 95-CR-10020-01)**

---

Stephen M. Joseph, Redmond & Nazar, LLP, Wichita, Kansas, for Defendant-Appellant.

Montie R. Deer, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee.

---

Before **PORFILIO, HOLLOWAY,** and **ANDERSON**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

Defendant Ronald Roe Messner appeals his five-count conviction on a superseding indictment charging violations of 18 U.S.C. § 152 dealing with bankruptcy related crimes. On appeal, he contends the district court erroneously: (1) failed to dismiss two of the charges against him; (2) denied his motion for a new trial on three other charges; (3) allowed expert legal testimony on a legal issue; (4) ordered restitution; and (5) enhanced his sentence. Because the only error we find relates to restitution, we affirm in part and reverse in part.

Mr. Messner filed two petitions for reorganization under Chapter 11 of the Bankruptcy Code in March 1990. The first was filed as a joint personal petition with Ruth Ann Messner, and the second was a corporate petition in the name of Commercial Builders of Kansas, a corporation in which Mr. Messner was an officer and stockholder. As debtor-in-possession in his personal reorganization, Mr. Messner submitted a reorganization plan one year later. The bankruptcy court confirmed this plan in April 1991. The case itself, however, remained open and under administration in the bankruptcy court until November 22, 1994. The corporate reorganization was converted to a liquidating bankruptcy under Chapter 7. That case was still pending upon the date of the filing of the indictment.

Mr. Messner was convicted on counts one, two, three, six, and seven of the superseding indictment. Counts one and two alleged, in 1990, after filing his petition, Mr. Messner twice failed to disclose a partnership interest he had in commercial property.

Count three alleged, in 1990, Mr. Messner also failed to disclose a $246,845 promissory note he had assigned to his son for $10 before filing. Count six alleged, in 1992, Mr. Messner concealed his receipt of $10,000 in cash from a pre-bankruptcy contractual interest he had in a residential real estate contract. Count seven alleged, in 1992, Mr. Messner also concealed his receipt of $10,000 in cash from bonds issued to Commercial Builders in 1989. Although neither the real estate interest nor the bonds were disclosed in either of the bankruptcy cases, Mr. Messner concedes they should have been set forth in the statement of financial affairs of his personal petition.[1]

Following the verdict, the court sentenced Mr. Messner to serve a twenty-seven month sentence and pay $72,500 in restitution. We now consider the issues he has raised in his appeal.

## I.

In an artfully conceived argument, Mr. Messner asserts the district court should have dismissed counts six and seven because he had no duty to disclose his receipt of assets in 1992. Mr. Messner contends confirmation of the reorganization plan in 1991 dissolved his bankruptcy estate, revesting all estate property--even that which was undisclosed--back to him. As a result, Mr. Messner argues his status as a debtor-in-possession and fiduciary to creditors ended in 1991, terminating his duty of disclosure at

---

[1]*See* page 30 of Appellant's opening brief.

- 3 -

that time. He maintains Chapter 11 of the Bankruptcy Code imposes a duty of disclosure only on debtors-in-possession, and he was not a debtor-in-possession in 1992. He therefore insists he was under no duty to disclose his receipt of $20,000 and cannot be guilty of criminal concealment as charged. Admitting the government could have charged him with not reporting the existence of his interest in the real estate contract and bonds in 1990, he emphasizes the government failed to do so. He postulates it is not this court's province to compensate for the government's failure to indict him properly by creating a duty where none exists by statute.

The government takes the opposite position maintaining the bonds and real estate contract remained in the bankruptcy estate after confirmation of the reorganization plan, continuing Mr. Messner's duty of disclosure as a debtor-in-possession. According to the government, undisclosed property does not revert back to the debtor upon confirmation, but instead remains in the Chapter 11 estate until either dealt with under a reorganization plan or abandoned. To have avoided criminal liability here, the government suggests Mr. Messner should have petitioned the bankruptcy court to reopen the reorganization case to determine whether the assets should be administered for the benefit of creditors or abandoned. To hold otherwise, the government argues, would encourage debtors to conceal assets until confirmation of the reorganization plan, frustrating the full disclosure and fresh start principles of the bankruptcy process.

Because the district court's denial of Mr. Messner's motion to dismiss counts six and seven was based on its interpretation of 28 U.S.C. § 152(7), we review its decision de novo. ***United States v. Wood***, 6 F.3d 692, 694 (10th Cir. 1993). Applying de novo review, we believe the district court properly concluded the counts should not have been dismissed.

Proper review of this issue must begin with the applicable language of the statute under which Mr. Messner was charged:

> Whoever, either individually or as an agent or officer of any person or corporation, . . . **with intent to defeat the provisions of title 11**, knowingly and fraudulently transfers or **conceals** any of **his property** or the property of such other person or corporation . . . [is guilty of bankruptcy fraud].

18 U.S.C. § 152(7) (1978) (emphasis added).

Recitation of the statutory language immediately emphasizes the fallacies in defendant's argument. The first fallacy is that § 152(7) does not apply to him because the money he acquired after confirmation belonged to him and not the estate. The very language of § 152(7) itself makes clear culpability will attach to a concealment of a person's <u>own</u> property if done for the purpose of defeating bankruptcy. Therefore, whether the assets from which the money was derived vested in Mr. Messner or remained in the estate is not significant. Moreover, the plan itself defines the assets of Mr. Messner's estate as: "All personal and real property of the debtor, whether tangible or intangible, . . . as defined in § 541 of the Bankruptcy Code." Article II, paragraph 2.4,

- 5 -

of the plan. Therefore, when coupled with 11 U.S.C. § 541(a)(6), which includes in a bankruptcy estate the "proceeds" of estate assets, this provision of the plan swept into the estate and the plan itself the money defendant received as proceeds of estate property.

This factor is important because the money Mr. Messner received did not simply appear in his hands. He received it because it was derived from tangible or intangible assets he held prior to the filing of either bankruptcy petition. At the very least, then, this money had to have been the proceeds of estate property by law and by definition.

Even if the plan were not so encompassing, the reach of § 541(a)(6) is. It attaches to any after-acquired property of the estate and makes that property subject to bankruptcy jurisdiction. Although, in general, property not owned by a debtor until after the filing of a bankruptcy petition is not includable in the bankruptcy estate, an exception exists for after-acquired property comprised of the proceeds of estate property. *See* 5 Lawrence P. King, ***Collier on Bankruptcy***, § 541.17 (15th ed. 1996). Thus, even though the <u>money</u> received by Mr. Messner subsequent to the confirmation of his plan was not itself an asset at the time of the filing of his petition, it was subject to disclosure as proceeds of such assets.

We also note another fallacy in Mr. Messner's defense. Contrary to his fundamental hypothesis, the confirmation of the plan did not terminate the bankruptcy proceedings. Indeed, under Article VIII of the plan itself, the bankruptcy court retained jurisdiction over the case "for one year after the date of the entry of the order of

confirmation." Moreover, the plan provided the debtor with specific powers and responsibilities after confirmation. In fact, the government maintains the Messner case was not finally closed until November 22, 1994, a date after the transactions which form the basis for counts six and seven. Thus, Mr. Messner cannot claim the confirmation of the plan closed the Chapter 11 case and dissolved any fiduciary responsibility he had as debtor-in-possession.

Because Mr. Messner failed to make the required disclosure, even if the money were nominally his property, he defeated the purpose of bankruptcy by failing to amend his bankruptcy filings or otherwise disclose the receipt of the funds. In this case, the bankruptcy purpose was to marshal the assets of the estate for payment to creditors in accordance with the terms of the plan. Because Mr. Messner retained the money, $20,000 was not distributed under the plan as it should have been; hence, the purpose of the bankruptcy was defeated.


## II.

Mr. Messner argues his right to a fair trial on counts one, two, and three was prejudiced by evidence pertinent to counts six and seven, which should have been dismissed before trial. He contends the government's evidence on the dismissable counts ruined his credibility, devastating his defense to the first three counts.

We review the district court's denial of Mr. Messner's motion for a new trial under the abuse of discretion standard of review. *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994). Applying that standard, we will reverse the district court only if it "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (citations omitted). Because it is based upon a faulty premise, we see no merit in the argument.

Robbed of the contention counts six and seven should have been dismissed, the issue is deflated. Moreover, because we would analogize the point as the functional equivalent to a challenge of the joinder of offenses, Mr. Messner bears a "heavy burden" on appeal to demonstrate real prejudice from the evidence presented on counts six and seven. *United States v. Muniz*, 1 F.3d 1018, 1023 (10th Cir. 1993). To prevail, Mr. Messner must show actual prejudice because "error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with the party asserting error." *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1156 (10th Cir. 1985). Thus, regardless of how we construe Mr. Messner's argument, we must affirm the district court absent a showing that the evidence introduced on counts six and seven actually prejudiced his right to a fair trial on counts one, two, and three.

Mr. Messner has made no such showing. We see no indication that the jury was unable to compartmentalize the evidence it considered on each count. Indeed, his

acquittal on counts four and five suggests the opposite was true. Because the offenses alleged in counts six and seven occurred at different times than those alleged in counts one, two, and three, concerned different assets, and were proven by different evidence, we can see no basis for concluding the admission of evidence pertinent to counts six and seven prejudiced Mr. Messner's right to a fair trial on the other counts. The district court's denial of a new trial on those counts therefore was proper.

## III.

Mr. Messner argues that the district court erred in allowing expert testimony from Richard Wieland, an attorney in the U.S. Trustee's Office, regarding a debtor's post-confirmation duty of disclosure. Mr. Messner contends Mr. Wieland's testimony impermissibly encroached on the trial court's function to decide the law of the case, depriving him of his only defense to counts six and seven. The government, by contrast, argues that the testimony was proper because it assisted the trier of fact in determining whether Mr. Messner intentionally concealed assets from his creditors to defeat the provisions of the bankruptcy code. Because Mr. Wieland's testimony did not address the ultimate issue of Mr. Messner's guilt or innocence, the government contends it was admissible in this instance.

We review a district court's admission of expert testimony for abuse of discretion. ***United States v. Kunzman***, 54 F.3d 1522, 1530 (10th Cir. 1995). Though under this

standard, we will not reverse the district court without a "definite and firm conviction that [it] made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances," *Moothart*, 21 F.3d at 1504, reversal is appropriate when the court fails to consider the applicable legal standard for its discretionary judgment. *Summers v. Utah*, 927 F.2d 1165, 1168 (10th Cir. 1991) (citations omitted). Given our precedent on this issue, we believe the district court abused its discretion in allowing expert legal testimony on a debtor's post-confirmation duty of disclosure. However, we also believe the error was harmless.

In *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988) (en banc), we held an attorney called as an expert witness could not state his view of the law governing the verdict because "the judge is the sole arbiter of the law and its applicability." *Id.* at 807. While recognizing that legal testimony was not inadmissible in all cases, we explained, "[W]hen the purpose of the testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case." *Id.* at 810. *Accord United States v. Kingston*, 971 F.2d 481, 486 (10th Cir. 1992) ("[E]ven expert witnesses are not permitted to give opinions as to what the law is."). In this instance, the government admits that Mr. Wieland "testified how an undisclosed asset should be reported once a [reorganization] plan has been confirmed." That being the case, it is evident Mr. Wieland did in fact state his view of the law governing the jury's verdict.

Because such testimony is impermissible under **Specht**, it should not have been admitted in evidence.

The government's arguments to the contrary are unpersuasive. While Mr. Wieland's testimony may have helped the jury decide whether Mr. Messner's concealment was intentional, it nevertheless invaded the judge's province to define the law. For the same reason, the government is mistaken in relying on the fact that Mr. Wieland's testimony did not address the ultimate issue of guilt or innocence. Finally, the government's reliance on **United States v. Arutunoff**, 1 F.3d 1112 (10th Cir. 1993), is similarly misplaced.

The court in **Arutunoff** did not permit expert legal testimony on security registration requirements, as argued by the government. Rather, the court held that such testimony constituted harmless error because it correctly stated the law and did not attempt to apply the law to the facts of the case. **Id.** at 1118. The government also relies on the D.C. Circuit's recent decision in **United States v. Sobin**, 56 F.3d 1423 (D.C. Cir. 1995), which upheld a trial court's decision to allow expert testimony on the information a bankruptcy trustee expects to receive in response to questions contained in a "Statement of Financial Affairs." Because the disputed issues at trial were not even addressed by the legal testimony in **Sobin**, that decision is distinguishable from the case at hand. More importantly, however, is the fact that **Specht** is binding authority in this circuit.

A defendant bears the burden of demonstrating that the court's erroneous admission of evidence "affected [his or her] substantial rights." **K-B Trucking Co.**, 763 F.2d at 1155-56. In this instance, Mr. Messner's rights could not have been affected by the district court's error because Mr. Wieland's view of the law is correct. It follows, then, no prejudice occurred in this instance. *See Arutunoff*, 1 F.3d at 1118 ("To the extent that the expert accurately discussed the requirements of the law [the defendant] suffered no harm.").

## IV.

The next question is whether the district court erred in ordering restitution in the amount of $72,500. Because the court included the acts of which Mr. Messner was convicted in counts one to three in calculating the amount of restitution, he maintains the restitution is excessive because those actions caused no losses. He correctly points out before confirmation of the plan he disclosed his partnership interest in commercial property that formed the basis of the charges in counts one and two. That disclosure resulted in the sale of the property for the benefit of creditors. Likewise, he urges no loss resulted from his failure to disclose the promissory note in count three because the note was ultimately assigned to the bankruptcy trustee, who sold it for the benefit of the estate.

We review the amount of restitution ordered by the district court for abuse of discretion. ***United States v. Diamond***, 969 F.2d 961, 965 (10th Cir. 1992). An abuse of discretion occurs when, for example, the trial court fails to consider the applicable legal standard upon which its discretionary judgment is based. ***Summers***, 927 F.2d at 1168. Because a restitution order must be based on actual loss and because no actual loss to creditors occurred from concealments charged in counts one through three, we conclude the district court erred in awarding restitution in the amount of $72,500.

Section 3663 of title 18 specifically requires a court ordering restitution to consider "the amount of the <u>loss sustained</u> by a victim as a result of the offense." 18 U.S.C. § 3663(a) (1985) (emphasis added).[2] Thus, unlike the sentencing guidelines, which allow a court to consider actual or intended loss for the purposes of sentencing, *see* U.S.S.G. § 2F1.1, section 3663 implicitly requires that an award of restitution be based on the amount of loss actually caused by the defendant's offense. *See **United States v. Gabriele***, 24 F.3d 68, 73 (10th Cir. 1994) (upholding restitution order because amount "represented a mere fraction of the victim's loss"); ***United States v. McAlpine***, 32 F.3d 484, 490-94 (10th Cir. 1994) (remanding restitution order because district court failed to specify whether amount represented victims' losses); ***United States v. Jordan***, 890 F.2d 247, 253 (10th Cir. 1989) ("<u>Actual damages</u> . . . may be properly ordered as

---

[2]The same statutory text has been revised and is now found in 18 U.S.C. § 3663(a)(1)(B), Pub. L. No. 104-132, 110 Stat. 1232 (Apr. 24, 1996).

restitution when the amount has been judicially determined pursuant to notice and hearing.") (emphasis added). The burden of demonstrating "the amount of the loss sustained" rests with the government. 18 U.S.C. § 3664(d) (1985).[3]

In this instance, all of the assets at issue in counts one through three were eventually added to the bankruptcy estate and liquidated for the benefit of Mr. Messner's creditors. Because the same treatment would have resulted had Mr. Messner initially disclosed his ownership of the assets, it is not evident creditors were actually harmed by Mr. Messner's initial attempt to defraud them. At the very least, the government has not met its burden of proof to establish the amount of loss as required by § 3664(d). We therefore hold the district court abused its discretion in awarding restitution based on those counts. On remand, the district court must recalculate the amount of restitution to take into account this error.

## V.

Next, Mr. Messner challenges the district court's calculation of loss for the purpose of sentencing. He argues that the district court erred by using his interest in partnership property rather than his interest in the partnership itself in the calculation. The court based its determination on the testimony of Mr. Messner's partner who believed the property was worth $130,000-$140,000, from which the court arrived at a

---

[3]The same statutory text has been revised and is now found in 18 U.S.C. § 3664(e), Pub. L. No. 104-132, 110 Stat. 1232 (Apr. 24, 1996) .

valuation of $135,000 for that property. After subtracting the $70,000 mortgage on the property, the court estimated the property had an equity value of $65,000, half of which belonged to Mr. Messner. Yet, because he claims only one witness focused on the correct property interest for determining the amount of intended loss on counts one and two, Mr. Messner argues that we should accept his $5,000 loss estimate over the court's $32,500 loss estimate as a matter of law.

Mr. Messner also argues the district court erred in basing its valuation of the promissory note at issue in count three on the price it produced on liquidation. According to Mr. Messner, the court should have assigned no value to the loss because the only witness to estimate the note's fair market value concluded it was unenforceable and therefore worthless.

Alternatively, Mr. Messner contends the district court's loss calculation was improper because he was incapable of costing his creditors the sum arrived at by the court. Mr. Messner argues after subtracting liquidation costs, the value of the assets at issue in counts one through three was minimal and would have had little or no effect on creditors' willingness to accept his reorganization plan either way.

The government responds the district court's $32,500 loss estimate on counts one and two was proper because the parties stipulated the property's value in 1990 was $131,000. That is, after subtracting the mortgage balance, this estimate leaves the value of Mr. Messner's share at approximately $32,500. The government also urges because

the $5,000 ultimately paid for Mr. Messner's partnership interest was merely a liquidation price, it would not be a proper valuation of the loss. Additionally, the government argues that the district court's loss estimate of $20,000 on count three was conservative, given the face value of the promissory note was $245,845.

We review the factual findings supporting a district court's offense level calculation under the clearly erroneous standard. *United States v. Smith*, 951 F.2d 1164, 1166 (10th Cir. 1991). Under this standard, we will reverse the district court only if we have a "definite and firm conviction that a mistake has been made." *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 511 (10th Cir. 1985). Because we are unconvinced that the district court's loss estimate for the purposes of sentencing is clearly erroneous, we must affirm on this issue.

The Sentencing Guidelines specifically provide that "loss is the value of the money, property, or services unlawfully taken." U.S.S.G. § 2F1.1, comment. (n.7). When property is the subject of the loss, its fair market value determines the loss amount, unless that value is difficult to ascertain or inadequate to compensate for the victim's harm. § 2B1.1, comment. (n.2). If the defendant's intended loss is greater than the actual loss resulting from his or her conduct, a court will use the greater, intended loss amount for the purpose of sentencing. § 2F1.1, comment. (n.7). Because the Guidelines require loss to be determined objectively, Mr. Messner's alternative argument, which proposes valuing the assets upon their subjective worth to creditors, is without merit.

Indeed, the amount of loss is usually determined by an item's fair market value. §

2B1.1; *United States v. Reddeck*, 22 F.3d 1504, 1512 (10th Cir. 1994) ("Calculation of

the lost value requires an objective standard, usually measured by the 'fair market

value.'").

Mr. Messner's remaining arguments on this issue are equally without merit.

Though it is arguable whether the district court's loss estimate in counts one and two

should have focused on his interest in the partnership rather than partnership property,

this point is without any practical significance. The only asset owned by Mr. Messner's

partnership was the commercial property; thus, his partnership share in the commercial

property could not have been significantly different from his share in the partnership

itself. Given the fact that Mr. Messner's own valuation of the partnership interest when

finally disclosed was $56,000, he has little reason to complain on appeal about the

court's lower loss estimate.

Similarly, Mr. Messner's argument with the district court's $20,000 loss estimate

on the promissory note is not convincing given the note's face value of $245,845.

Obviously, the note had some redeemable value because its obligor paid $20,000 to get it

back.

**VI.**

Finally, Mr. Messner argues that the district court erred in enhancing his sentence for violating a judicial process. According to Mr. Messner, the bankruptcy system is not a "process." He maintains a process is a directive based upon the same formalities that undergird orders, injunctions, and decrees. The government, by contrast, contends that bankruptcy fraud is fraud upon the bankruptcy system. Therefore, it urges us to join the other circuits which have addressed this issue and held bankruptcy fraud warrants a two-level sentencing enhancement for violation of judicial process.

We review a district court's interpretation of the Sentencing Guidelines de novo, *McAlpine*, 32 F.3d at 487-88, and agree with the district court that bankruptcy fraud constitutes a violation of judicial process. Section 2F1.1 of the Sentencing Guidelines authorizes the imposition of a two-level sentence enhancement when a defendant's offense involves a "violation of any judicial or administrative order, injunction, decree or process." U.S.S.G. § 2F1.1(b). Thus far, three other circuits have held an enhancement under this section is proper for defendants convicted of bankruptcy fraud. *United States v. Michalek*, 54 F.3d 325 (7th Cir. 1995); *United States v. Bellew*, 35 F.3d 518 (11th Cir. 1994); *United States v. Lloyd*, 947 F.2d 339 (8th Cir. 1991). Central to those courts' analyses was the fact that the defendant had "sought protection from his [or her] creditors under the shelter of bankruptcy" and then "abused the bankruptcy process" by concealing estate assets. *Lloyd*, 947 F.2d at 340.

Although a textual argument may be made that the term "process" refers only to "a specific judicial mechanism such as a subpoena or summons," ***Michalek***, 54 F.3d at 335-36 (Ferguson, J., dissenting), we see no reason to read § 2F1.1 in this manner. The district court's interpretation of judicial "process" to embrace judicial proceedings, including those brought in bankruptcy, is more reasonable. Moreover, this view is in accord with the essence of the crime of conviction because it recognizes the importance of protecting the integrity of the bankruptcy system. Bankruptcy fraud undermines the whole concept of allowing a debtor to obtain protection from creditors, pay debts in accord with the debtor's abililty, and thereby obtain a fresh start. When a debtor frustrates those objectives by concealing the very property which is to be utilized to achieve that purpose, the debtor works a fraud on the entirety of the proceeding. By obtaining protection from creditors and, at the same time, denying them of their lawful and equitable due, a debtor violates the spirit as well as the purpose of bankruptcy. This artifice strongly supports increasing the perpetrator's sentence for committing fraud upon the very source of his financial refuge and salvation.

In sum, we **REVERSE** the district court's calculation of the amount of restitution and **REMAND** for resentencing on this aspect of the sentence. We **AFFIRM** the district court in all other aspects of the case.