**UNITED STATES of America,**
**Appellee–Cross–Appellant,**

v.

**Joseph W. KENNEDY, Jr., Defendant–**
**Appellant–Cross–Appellee.**

**No. 99–1712(XAP).**

United States Court of Appeals,
Second Circuit.

Argued: June 13, 2000.

Decided: Nov. 17, 2000.

Frank A. Aloi, Rochester, NY, for defendant-appellant-cross-appellee.

Christopher V. Taffe, Assistant United States Attorney for the Western District of New York, for Denise E. O'Donnell, United States Attorney for the Western District of New York (Bradley E. Tyler, Assistant United States Attorney for the Western District of New York, on the brief), for appellee-cross-appellant.

Before: KEARSE, SACK, and SOTOMAYOR, Circuit Judges.

Judge SACK dissents in a separate opinion.

SOTOMAYOR, Circuit Judge:

Appeal from a judgment of conviction and sentence of the United States District Court for the Western District of New York (Charles J. Siragusa, Judge) for three counts of bankruptcy fraud under 18 U.S.C. § 152(1), (3), and cross-appeal from the denial of a two-level enhancement under U.S.S.G. § 2F1.1(b)(4)(B) (1998). In a separate summary order filed today, we address the merits of defendant's appeal and affirm the district court's judgment with respect to all issues raised therein. In this opinion, we address the Government's claim on cross-appeal that the district court erred by failing to apply a two-level enhancement for defendant's "violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines," U.S.S.G. § 2F1.1(b)(4)(B), because defendant concealed assets in a bankruptcy proceeding. For the reasons that follow, we vacate the district court's decision not to impose a two-level enhancement under U.S.S.G. § 2F1.1(b)(4)(B) and remand for resentencing consistent with this opinion.

## BACKGROUND

On May 27, 1994, defendant Joseph W. Kennedy, Jr. filed an individual Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of New York. Question 16(a) of the petition provided as follows:

> If the debtor is an individual, list the names and addresses of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, [or] sole proprietorship, or was a self-employed professional within the two years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting equity securities within the two years immediately preceding the commencement of this case.

In response to the above, defendant disclosed only that (1) he was the CEO and 50% shareholder of Consolidated Agency, Inc., and (2) he was the Secretary and 49% shareholder of Ridge Associates, Inc.

On August 20, 1998, defendant was charged with three counts of bankruptcy fraud under 18 U.S.C. § 152(1), (3). Count One of the indictment charged defendant with failing to disclose that he was an officer, director, and/or equity owner of two companies—Kennedy Agency, Inc. ("KAI") and Skalny Insurance Agency, Inc. ("SIA")—at some time during the two years immediately preceding the filing of his bankruptcy petition, in violation of 18 U.S.C. § 152(3). Counts Two and Three of the indictment charged defendant with concealing his ownership interest in KAI and SIA, respectively, from the bankruptcy trustee, in violation of 18 U.S.C. § 152(1).

At trial, the Government introduced evidence that defendant individually owned stock in SIA prior to the filing of his bankruptcy petition, and that he also owned KAI during the same period. With respect to SIA, defendant stated in a March 25, 1992 deposition that he owned SIA, and SIA's corporate books reflected that 47.5 shares of stock (of 100 total outstanding shares) were issued to defendant on January 21, 1988. SIA's filings with New York's Insurance Department from January 1986 through October 1993, which defendant signed under oath, also indicated that defendant owned 47.5% of SIA's shares. Finally, both defendant's business associate, Nancy Crawford, and her attorney, Michael Polozie, testified as to their belief that defendant owned SIA prior to the filing of his bankruptcy petition.

With respect to KAI, the company's tax returns for the years immediately preceding the filing of defendant's bankruptcy petition, which were sworn to and subscribed by defendant, listed defendant as KAI's owner. KAI's 1099 forms for the years 1990 and 1991 reflected dividend payments to defendant in his individual capacity. Defendant also submitted sworn declarations to the New York and Pennsylvania Insurance Departments, both before and after his filing for bankruptcy, stating that he owned KAI. Finally, in the same sworn deposition on March 25, 1992, defendant stated that he owned KAI.

On April 9, 1999, the jury returned a verdict of guilty on all three counts. Defendant then moved for a new trial under Fed.R.Crim.P. 33, claiming that certain forensic evidence collected after trial constituted newly discovered, exculpatory evidence. On October 26, 1999, the district court denied defendant's motion for a new trial and sentenced defendant to 27 months of incarceration on each count, to be served concurrently; three years of supervised release on each count to run concurrently from the date of release from prison; restitution in the amount of $235,-000; and a special assessment of $250. In arriving at defendant's sentence, the district court denied the Government's request for a two-level enhancement of defendant's offense level under U.S.S.G. § 2F1.1(b)(4)(B) based on defendant's concealment of assets in a bankruptcy proceeding.

In this opinion, we address the merits of the Government's appeal from the district court's denial of a two-level enhancement under U.S.S.G. § 2F1.1(b)(4)(B).

**DISCUSSION**

■ Section 2F1.1(b)(4)(B) of the Sentencing Guidelines provides for a two-level enhancement of a defendant's offense level if the offense involved a "violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines." U.S.S.G. § 2F1.1(b)(4)(B). In response to the Government's request for an enhancement under this section, the district court concluded, as a matter of law, that § 2F1.1(b)(4)(B) does not apply to defendant's concealment of assets in a bankruptcy proceeding because such concealment did not constitute a violation of judicial process. Reviewing this question of law *de novo, see United States v. Napoli,* 179 F.3d 1, 6 (2d Cir.1999), *cert. denied,* 528 U.S. 1162, 120 S.Ct. 1176, 145 L.Ed.2d 1084 (2000), we vacate the district court's

sentencing decision and adopt the majority view among the circuits that the concealment of assets in a bankruptcy proceeding constitutes a violation of judicial process within the meaning of U.S.S.G. § 2F1.1(b)(4)(B). *See United States v. Kubick*, 205 F.3d 1117, 1122–24 (9th Cir. 1999); *United States v. Mohamed*, 161 F.3d 1132, 1136 (8th Cir.1998), *cert. denied*, 526 U.S. 1044, 119 S.Ct. 1345, 143 L.Ed.2d 508 (1999); *United States v. Guthrie*, 144 F.3d 1006, 1010–11 (6th Cir. 1998); *United States v. Webster*, 125 F.3d 1024, 1036 (7th Cir.1997); *United States v. Messner*, 107 F.3d 1448, 1457 (10th Cir. 1997). *But see United States v. Thayer*, 201 F.3d 214, 226–28 (3d Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 2691, 147 L.Ed.2d 963 (2000).

In reaching its decision that U.S.S.G. § 2F1.1(b)(4)(B) does not apply to cases of bankruptcy fraud, the district court relied on this Court's narrow construction of the phrase violation of judicial process in *United States v. Carrozzella*, 105 F.3d 796 (2d Cir.1997):

"Violation" strongly suggests the existence of a command or warning followed by disobedience. This analysis in turn suggests that the term "process"—the command or warning violated—is used, not in the sense of legal proceedings generally, but in the sense of a command or order to a specific party, such as a summons or execution issued in a particular action. This narrower reading ... is also consistent with the general practice—known as *ejusdem generis*—of construing general language in an enumeration of more specific things in a way that limits the general language to the same class of things enumerated. In the present circumstances, the word "process" follows "injunction, order, [or] decree" and is most easily read in the narrower sense of a command or order issued to a specific person or party.

*Carrozzella*, 105 F.3d at 800 (citations omitted); *see also Thayer*, 201 F.3d at 228 (stating that, although the term judicial process in § 2F1.1(b)(4)(B) "could be read to encompass an entire judicial proceeding, *e.g.* the entire bankruptcy proceeding, it seems more likely it was intended to be applied in a more circumscribed manner").

Although the *Carrozzella* panel expressed skepticism about whether the phrase violation of judicial process in U.S.S.G. § 2F1.1(b)(4)(B) was sufficiently broad to encompass a defendant's concealment of assets in a bankruptcy proceeding, we emphasize that the views expressed in *Carrozzella* were *dicta:*

Our doubt on this matter need not be fully resolved ... because the failure of [defendant's] conduct to fit comfortably within Section [2F1.1(b)(4)(B) ] [1] reveals a fatal problem with imposing that Section's two-level adjustment. That Section applies only to a "violation of any judicial or administrative order, injunction, decree, or process *not addressed elsewhere in the guidelines.*" ... Because [defendant's] conduct is well within the heartland of the conduct addressed by Section 3B1.3 and fits only very doubtfully within Section [2F1.1(b)(4)(B) ], we hold that it is "addressed elsewhere."

*Carrozzella*, 105 F.3d at 800–01 (citations omitted) (emphasis in original).

■ In the absence of any binding Circuit precedent on this issue, we disagree with the *Carrozzella* panel's suggestion that U.S.S.G. § 2F1.1(b)(4)(B) would not cover a defendant's concealment of assets in a bankruptcy proceeding. We use basic statutory construction rules when interpreting the Sentencing Guidelines. *See United States v. Martinez–Santos*, 184 F.3d 196, 204 (2d Cir.1999). Thus, "we must give the words used their common meaning, absent a clearly expressed man-

---

1.  We note that the *Carrozzella* opinion referenced the text of U.S.S.G. § 2F1.1(b)(3)(B) (1995) and its Commentary, which is the identically-worded predecessor to U.S.S.G. § 2F1.1(b)(4)(B) (1998) and its Commentary.

ifestation of contrary intent." *United States v. Demerritt*, 196 F.3d 138, 141 (2d Cir.1999) (internal quotation marks and citation omitted). Our analysis is that the plain meaning of the phrase violation of judicial process in U.S.S.G. § 2F1.1(b)(4)(B) includes within its scope "violations" of the bankruptcy · "process."

■■ "Where the identical word or phrase is used more than once in the same act, there is a presumption that they have the same meaning." 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:28, at 357 (6th ed.2000). The Guidelines do not specifically define the term judicial process,[2] but the term is used elsewhere in the Guidelines in a manner that clearly refers to legal proceedings generally.[3] *See* U.S.S.G. § 4A1.2(f) In discussing the computation of a defendant's criminal history points, the Guideline uses the phrases judicial process and judicial proceedings interchangeably:

> Diversion from *the judicial process* without a finding of guilt (*e.g.*, deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding is

counted ..., except that diversion from juvenile court is not counted.

U.S.S.G. § 4A1.2(A) (first emphasis added). We also note that the use of the term in this manner is common in the opinions of this Court, albeit in other contexts. *See, e.g., Primetime 24 Joint Venture v. National Broadcasting Co., Inc.*, 219 F.3d 92, 100 (2d Cir.2000) ("a pattern of baseless, repetitive claims may lead the factfinder to conclude that the administrative and *judicial processes* have been abused") (emphasis added) (internal quotation marks and alterations omitted); *Morgan v. Bennett*, 204 F.3d 360, 367 (2d Cir.2000) ("intimidation of witnesses raises concerns for both the well-being of the witness and her family and the integrity of the *judicial process*") (emphasis added). While *Carrozzella*'s application of the *ejusdem generis* canon is not without force,[4] we conclude that the better interpretation of § 2F1.1(b)(4)(B) is that the phrase judicial process generally encompasses bankruptcy proceedings and that the terms "order," "injunction," and "decree" that precede it are illustrative but not limiting subsets of judicial process.[5]

2. Application Note 6 and the Background of U.S.S.G. § 2F1.1(b)(4)(B) do not elucidate the meaning of the term judicial process. Application Note 6 offers a single example of when the enhancement applies; it discusses application of the enhancement to a defendant who controlled a party in a prior proceeding and had knowledge of a prior decree or order that the party violated. *See* U.S.S.G. § 2F1.1(b)(4)(B) Application Note 6 ("If it is established that an entity the defendant controlled was a party to the prior proceeding, and the defendant had knowledge of the prior decree or order, this provision applies even if the defendant was not a specifically named party in that prior case."). The Background also discusses only one situation where the enhancement applies, noting that a defendant who has been subject to civil or administrative proceedings for the same or similar fraudulent conduct and fails to conform with the requirements of judicial process or orders from the proceeding shows "aggravated criminal intent and is deserving of additional punishment...." U.S.S.G. § 2F1.1. Background. Unlike the *Carrozzella* panel, we simply do not read the limited examples in

the Commentary as defining the entire universe of scenarios that the Guidelines contemplated would be a violation of judicial process. *See Carrozzella*, 105 F.3d at 800.

3. Black's Law Dictionary recognizes both a broad definition of judicial process-"all the acts of a court from the beginning to the end of its proceedings in a given cause"-and a narrow definition-"the writ, summons, mandate, or other process which is used to inform the defendant of the ... proceedings against him and to compel his appearance, in either civil or criminal cases." *See* Black's Law Dictionary 1205 (6th ed.1990).

4. We note that "ejusdem generis is only an aid in getting the meaning and does not warrant confining the operations of a statute within narrower limits than were intended." 2A Norman J. Singer, *Statutes and Statutory Construction* § 48A:08, at 645 (6th ed.2000).

5. In finding that the term judicial process encompasses bankruptcy proceedings, we reject the line of cases in other circuits holding

**▮]** In interpreting a statute, "we must look to the statute as a whole and construct an interpretation that comports with its primary purpose. . . ." *Connecticut v. United States Dep't of the Interior,* 228 F.3d 82, 89 (2d Cir.2000). Thus, even if we did not have an indication of the common usage of the term judicial process, reference to the underlying concerns of the Guidelines demonstrates that U.S.S.G. § 2F1.1(b)(4)(B) should include violations of the bankruptcy process. As the Tenth Circuit explained in *United States v. Messner:*

> [T]his view . . . recognizes the importance of protecting the integrity of the bankruptcy system. Bankruptcy fraud undermines the whole concept of allowing a debtor to obtain protection from creditors, pay debts in accord with the debtor's ability, and thereby obtain a fresh start. When a debtor frustrates those objectives by concealing the very property which is to be utilized to achieve that purpose, *the debtor works a fraud on the entirety of the proceeding.* By obtaining protection from creditors

and, at the same time, denying them of their lawful and equitable due, a debtor violates the spirit as well as the purpose of bankruptcy. This artifice strongly supports increasing the perpetrator's sentence for committing fraud upon the very source of his financial refuge and salvation.

*Messner,* 107 F.3d at 1457 (emphasis added); *see also Kubick,* 205 F.3d at 1124 (noting that "there is no more basic a command than to come clean and truthfully declare all assets and liabilities in bankruptcy. *Not to do so violates the heart of the process"*) (emphasis added); *Guthrie,* 144 F.3d at 1010–11 (quoting *Messner,* 107 F.3d at 1457); *cf. Diorio v. Kreisler–Borg Constr. Co.,* 407 F.2d 1330, 1331 (2d Cir. 1969) ("Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt. Statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business . . . .") (citations omitted).[6]

---

that a defendant's initial concealment of assets also violates a judicial order as that term is used in U.S.S.G. § 2F1.1(b)(4)(B). *See, e.g., United States v. Saacks,* 131 F.3d 540, 546 (5th Cir.1997) (noting that "when the fraudulent debtor takes the very first act by filing his petition in bankruptcy, he is acting subsequently to the previously adopted and promulgated standing orders and standard forms, all of which command complete and truthful disclosure"); *United States v. Michalek,* 54 F.3d 325, 333 (7th Cir.1995) ("[W]e cannot overlook the fact that the defendant's conduct violated the automatic stay provision, 11 U.S.C. § 362. Although the automatic stay is imposed initially not by judicial decree but by legislative command, it would exalt form over substance to maintain that the stay is not, for purposes of this guideline, a judicial order."); *United States v. Bellew,* 35 F.3d 518, 521 (11th Cir.1994) ("[T]he Bankruptcy Rules and Official Forms repeatedly mandate that a debtor disclose assets and liabilities and that these disclosures be truthful. . . . [B]y fraudulently concealing assets in the bankruptcy proceedings, [defendant] violated a 'judicial order' within the meaning of [the Guidelines].''). As we read the term "order" in § 2F1.1(b)(4)(B), we understand it to "con-

template[ ] only a specific order, such as a consent decree or an adjudicative order or mandate entered pursuant to judicial direction." *United States v. Shadduck,* 112 F.3d 523, 529 (1st Cir.1997) (holding that "the universal admonitions in the various Official Forms and/or Bankruptcy Rules applicable to all debtors in bankruptcy proceedings [do not] constitute 'judicial or administrative order[s]' within the meaning of [the Guidelines]"); *accord Thayer,* 201 F.3d at 228 ("The Bankruptcy Rules and Forms have more in common with statutes and procedural rules of general application than with orders of the court, which are directed to identified parties and indicate in specific terms what those parties are required to do.").

**6.** Additionally, we note that U.S.S.G. § 2F1.1(b)(4)(B) has been amended, effective November 1, 2000, specifically to include a two-level enhancement for any "misrepresentation or other fraudulent action during the course of a bankruptcy proceeding." United States Sentencing Commission Guidelines Manual, Supplement to Appendix C, Amendment 597 (2000). The Background of U.S.S.G. § 2F1.1 explains that "[t]he commission of a fraud in the course of a bankruptcy

Finally, we find that a broad construction of the phrase "violation of any judicial ... process not addressed elsewhere in the guidelines" is consistent with the overall structure and intent of the Guidelines. As the Government points out in its brief, no other provision in the Guidelines directly addresses the "aggravated criminal intent" associated with bankruptcy fraud in contrast to ordinary garden variety frauds. Therefore, given the nature of bankruptcy fraud, which is akin to obstruction of justice (which carries a significantly higher base offense level than the fraud guideline), or perjury (which also carries a higher base offense level), a two-level enhancement for bankruptcy fraud is entirely consistent with the overall policy embodied in the Guidelines. *Compare* U.S.S.G. § 2F1.1 (providing a base offense level of 6 for fraud), *with id.* § 2J1.2 (providing a base offense level of 12 for obstruction of justice), *and id.* § 2J1.3 (providing a base offense level of 12 for perjury). *See also Kubick,* 205 F.3d at 1124 ("Offenses involving fraud or deceit are assigned a base offense level of 6 under § 2F1.1, but this offense level is generic, covering all possible types of fraud. Specific offense characteristics such as those identified in § 2F1.1(b)(4)(B) for violation of a judicial process recognize the different nature, extent and severity of the conduct to be punished in the particular case."). We therefore hold that a defendant's concealment of assets in a bankruptcy proceeding warrants a two-level sentencing enhancement under U.S.S.G. § 2F1.1(b)(4)(B) because such conduct involves a violation of judicial process.

## CONCLUSION

For the foregoing reasons, we conclude that the district court erred by failing to apply a two-level enhancement under

proceeding subjects the defendant to an enhanced sentence because that fraudulent conduct undermines the bankruptcy process as well as harms others with an interest in the bankruptcy estate." U.S.S.G. § 2F1.1 Background (2000).

U.S.S.G. § 2F1.1(b)(4)(B). Accordingly, the judgment of the district court is vacated in part. We remand to the district court for resentencing consistent with this opinion.

SACK, Circuit Judge, dissenting:

I respectfully dissent for the reasons set forth in *dicta* in *United States v. Carrozzella,* 105 F.3d 796, 800 (2d Cir.1997), quoted in the majority opinion, *ante* at [6]. I have no disagreement with the majority's view that "a broad construction of the phrase 'violation of any judicial ... process not addressed elsewhere in the guidelines' is consistent with the overall structure and intent of the Guidelines," and "addresses the 'aggravated criminal intent' associated with bankruptcy fraud," *ante* at [10–11], but I do not think that those considerations permit the Court to do what the majority seems to: read the word "process" in the particular context of § 2F1.1(b)(4)(B) to mean "proceeding."

To be sure, the word "process," standing alone, *can* mean "[t]he proceedings in any action or prosecution," its first definition in *Black's Law Dictionary* 1222 (7th Ed.1999).* But it does not make sense to me to read the language of § 2F1.1(b)(4)(B) using "process" that way, i.e., "violation of any judicial or administrative order, injunction, decree, or *proceedings in any action.*"

I think that the plain meaning of "process" in the phrase "violation of any judicial or administrative order, injunction, decree, or process," is its narrow one: "A summons or writ, esp. to appear or respond in court <service of process>." *Id.* If the drafters of the Guidelines, instead of thus reciting four kinds of specific judicial commands as predicates for the two-level enhancement in § 2F1.1(b)(4)(B), as the

* The dictionary's first definition of "proceeding" is, "The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." *Id.* at 1221.

*Carrozzella* Court thought, meant to switch in mid-phrase from a recitation of three kinds of judicial commands to an all-encompassing general description of occurrences during lawsuits—"proceedings"—it seems to me that they would have told us so.