**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 20 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JESSE JOSEPH MAYNARD,

      Defendant - Appellant.

No. 00-6082
(D.C. No. 98-CR-164-R)
(Western District of Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO** and **McKAY**, Circuit Judges, and **BROWN**,[**] District Judge.

---

This matter involves appellant Jesse Joseph Maynard's appeal from his convictions for conspiracy, 18 U.S.C. § 371, concealment of the assets of a bankruptcy estate, 18 U.S.C. §§ 152 & 2, and embezzlement against a bankruptcy estate, 18 U.S.C. §§ 153 & 2. As in the related case, United States v. Love, No. 00-6083 (10th Cir. 2001), the parties are familiar with the facts, or at least with

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

their respective versions, thus we need not set them forth here. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

# I

In this appeal, Maynard contends that the evidence was insufficient to support his convictions and that the district court erred in denying his motion for judgment of acquittal.[1] Maynard makes two arguments in support of this contention: that the government's sole proof of a conspiracy, Jim Ray's testimony, was deficient; and that there could be no concealment of assets because the reinsurance refund was listed on the initial report filed with the bankruptcy court, as were the disbursements to Impact III ("Impact").[2]

---

[1] The jury found Maynard guilty, and the district court entered judgment, on counts 1, 3, 4, 5, 6, 7, 9 and 10 of the indictment. Those counts were as follows: count 1, conspiracy to commit bankruptcy fraud in violation of 18 U.S.C. § 371; count 3, aiding and abetting concealment of $270,000 of the bankruptcy estate in violation of 18 U.S.C. §§ 152 & 2; count 4, aiding and abetting concealment of $38,000 of the bankruptcy estate in violation of 18 U.S.C. §§ 152 & 2; counts 5 ($20,000), 6 ($9519.13), 7 ($32,275.31), 9 ($10,000), and 10 ($5000), aiding and abetting embezzlement against estate in violation of 18 U.S.C. §§ 153 & 2.

[2] In addition, Maynard appears to argue that because he did not have substantial influence over the operation of First Assurance & Casualty Company ("FACC") and because he was just a "figurehead" for Dick Jones, he can not be liable for the resulting demise of the corporation or for any fraudulent transfers. As an initial matter, we consider Maynard's own statement that he "ultimately made the decision to place [FACC] in Chapter 11 bankruptcy" an admission of his true authority in the corporation (Appellant's Br. at 4) and, most importantly, of his substantial role in FACC's bankruptcy. Moreover, even without that admission, our review of the record shows copious evidence demonstrating Maynard's important role in FACC's operations.

We review de novo the district court's ruling on a motion for judgment of acquittal and the sufficiency of the evidence to support such judgment. United States v. McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000). We inquire "'only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" Id. (quoting United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999)). The scope of our review is limited; we may "'neither weigh conflicting evidence nor consider the credibility of witnesses.'" Id. (quoting United States v. Pappert, 112 F.3d 1073, 1077 (10th Cir.1997)). "Defendants challenging a conviction on sufficiency of the evidence grounds face a difficult standard of review as we reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Spring, 80 F.3d 1450, 1459 (10th Cir. 1996) (citations and quotations omitted). We will not, however, uphold a conviction "obtained by nothing more than 'piling inference upon inference' or where the evidence raises no more 'than a mere suspicion of guilt.'" United States v. Rahseparian, 231 F.3d 1257, 1262 (10th Cir. 2000) (citations omitted).

We reject Maynard's argument that Ray's testimony merely supported the existence of a discussion and was insufficient to prove the existence of an

agreement for purposes of the conspiracy charge. According to Ray's testimony, Maynard stated at a meeting that he "wanted to move the money offshore. He didn't want to bring it back, because this is what they could use to start — or continue their new operations [such as ICS]." (IV Trial Tr. at 571 (emphasis added).) Ray also testified that Dick Jones and Maynard stated that it was time for FACC to file bankruptcy and that the "Sphere-Drake refund . . . was going to not be included in that bankruptcy because it was offshore." (Id. at 570–71 (emphasis added).) According to Ray, each of the meeting participants, except himself, expressed that he was on the same page regarding the refund. As for his own role at the meeting, Ray testified that his stated opinion was that the plan to keep the refund out of the bankruptcy estate "sounds like bankruptcy fraud." (Id. at 572.)

Importantly, Maynard's actions following the meeting were consistent with Ray's account of Maynard's expressed intentions and with the meeting participants' agreement regarding the refund. Maynard had the refund sent to his personal address and went to Panama to form "Asset Protection Services Corporation" for the sole purpose of opening a foreign bank account under the corporation's name to hold the $270,000 refund. Although Maynard argues that he brought that "money back into the United States and deposited [it] into an account for the benefit of [FACC]" and listed the refund on the bankruptcy filings

(Appellant's Br. at 16–17), the evidence at trial was sufficient to support a different story—namely that the refund was never transferred into a FACC account, but went directly to an Impact account. The Impact account, in turn, was not disclosed until FACC and Impact were declared alter egos. Moreover, the full $270,000 was never transferred from Panama; by the time the money was allegedly transferred back into the United States it was only $234,960. Based on the evidence, the jury also could have found that when the bankruptcy trustee, Janice Loyd, finally obtained the funds from the Impact account for the benefit of the bankruptcy estate, the funds were almost entirely depleted. Maynard himself received more than $29,000 in payments from that account. Under these circumstances, we simply cannot conclude that the evidence was insufficient to prove the agreement element of conspiracy beyond a reasonable doubt (count 1) or to demonstrate concealment of the refund from the bankruptcy estate (count 3).

We also reject Maynard's assertion that there was no concealment because each of the transfers forming the basis for the counts in the indictment was eventually disclosed to the bankruptcy court. As we discuss more fully in the related appeal, Love, No. 00-6083, mere disclosure of the fact of the disbursements forming the basis for counts 3–10 does not mean that Maynard and the other FACC principals did not conceal the actual assets of the bankruptcy estate from the court and from FACC's creditors. In this case, the disclosures

-5-

themselves misrepresented the original stated purposes of the transfers (e.g., by deeming transfers of funds as "reimbursements" or "reimbursements" as "consulting fees"). Additionally, the Impact accounts to which the FACC funds were transferred were not included by Maynard in the original filings with the bankruptcy court as assets of the bankruptcy estate. As such, a reasonable jury could have concluded beyond a reasonable doubt that transferring money from FACC accounts to Impact accounts worked to conceal or embezzle the assets of the bankruptcy estate from the court and the creditors in violation of 18 U.S.C. §§ 152 and 153.[3]

## II

Maynard argues that the "bankruptcy conspiracy charged in the indictment was at variance with the insurance fraud conspiracy presented at trial." (Appellant's Br. at 17.) We review this claim de novo. United States v. Williamson, 53 F.3d 1500, 1512 (10th Cir. 1995). "[W]here a single conspiracy is charged in the indictment, and the government proves only multiple

---

[3] We find the following combination of facts particularly telling with regard to the sufficiency of the evidence supporting Maynard's convictions for concealment and embezzlement: (1) Maynard's admission that he brought the reinsurance refund "back into the United States and deposited the money into an account for the benefit of [FACC]" (Appellant's Br. at 16–17); (2) his testimony that the reinsurance refund was wired into an Impact, not FACC, account; and (3) his failure, as debtor-in-possession, to disclose the funds in the Impact accounts as assets of the bankruptcy estate.

-6-

conspiracies, a defendant who suffers substantial prejudice must have his conviction reversed." United States v. Edwards, 69 F.3d 419, 432 (10th Cir. 1995) (citing Kotteakos v. United States, 328 U.S. 750, 773–74 (1946)).

We have reviewed the record and the indictment[4] and conclude that there was no fatal variance. "[T]he prohibition against variances is designed to insure notice of the charges" and derives from the Sixth Amendment right that an accused "be informed of the nature and cause of the accusation." Williamson, 53 F.3d at 1513, 1512 n.4. "A variance is fatal only when the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double jeopardy." Id. (quotation omitted). Maynard's indictment made clear that the government intended to offer, as proof of the conspiracy to commit bankruptcy fraud, evidence of the management or mismanagement of FACC. Thus, Maynard was not prejudiced in his ability to defend himself because he had notice of the evidence the government intended to admit.

Additionally, we reject Maynard's argument that there was prejudicial spillover created by the admission of evidence regarding insurance fraud on the part of the other actors. As best we can assess, the "insurance fraud" evidence

---

[4] Despite his variance claim, appellant did not provide us with a copy of the indictment. Under 10th Cir. R. 10.3(B) we may therefore decline to consider the issue. To assure ourselves, we nevertheless consider the claim.

Maynard claims was improperly admitted actually was evidence regarding the solvency of FACC prior to its filing for bankruptcy. This evidence did not tend to establish a separate insurance fraud conspiracy on the part of other actors, but directly related to Maynard because, as president, he held a substantial position of authority in the bankrupt corporation. We agree with the district court's conclusion that evidence of FACC's financial condition and the timing of its insolvency were "highly relevant" for assessing intent where FACC was making large transfers of money prior to the filing of bankruptcy. (I Trial Tr. at 17.)

**III**

Maynard's final argument is that the district court improperly enhanced his sentence under U.S.S.G. § 2F1.1(b)(1) (1993) for a loss of $7 million. We review de novo the district court's interpretation of the Sentencing Guidelines. United States v. Burridge, 191 F.3d 1297, 1301 (10th Cir. 1999). We review for clear error the factual findings supporting a district court's offense level calculation and will reverse "only if we have a definite and firm conviction that a mistake has been made." United States v. Messner, 107 F.3d 1448, 1456 (10th Cir. 1997) (quotation omitted).

Sentencing Guideline § 2F1.1 (1993) provides for an increase in the base offense level dependent on the amount of loss in a crime of fraud. Application note 7 states that "loss is the value of the money [or] property . . . unlawfully

taken" and that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, cmt. 7 (1993).

The district court's finding of loss was reasonable. Because the court's estimate was founded on the record and in economic reality, we reject Maynard's argument that the government failed to meet its burden of proving loss by a preponderance of the evidence. As the application notes state, "loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, cmt. 8. Indeed, appellant cites authority that supports the proposition that the government's burden in proving loss for purposes of § 2F1.1 is "not onerous, and a loss need not be calculated with exactitude" but rather must be based in economic reality. United States v. Santiago, 977 F.2d 517, 526 & n.9 (10th Cir. 1992). The district court heard testimony that the amount concealed in bankruptcy, including the amount associated with the bankruptcy conspiracy charge, was upwards of $7 million. The court also heard testimony that the intended loss was on the order of $81 million. Against this background, and viewed in the context of the more than $150 million in claims filed by creditors, we conclude that the district court's loss finding was economically realistic and not clearly erroneous.

**IV**

For the foregoing reasons, we **AFFIRM**.


ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge